STATE of Missouri, Respondent,

v.

Perry FREZZELL, Appellant.

No. WD 53788.

Missouri Court of Appeals, Western District.

Jan. 6, 1998.

Rosalynn Koch, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and HANNA and ELLIS, JJ.

ULRICH, Chief Judge, Presiding Judge.

Perry Lee Frezzell appeals his conviction for second degree statutory sodomy, section 566.064,[1] and sentence as a prior offender to a four-year term of imprisonment. Mr. Frezzell, more than twenty-one years of age, was convicted of having sodomized J.R., a fifteen-year-old boy, by performing fellatio on him. He claims that the trial court erred in (1) finding him competent to stand trial, (2) refusing to submit the affirmative defense that he reasonably believed the victim was seventeen years of age or older, and (3) instructing the jury that a mental disease or defect is not present in the case of "an abnormality manifested only by repeated antisocial conduct." The judgment of conviction is affirmed.

## FACTS

Fifteen-year-old victim, J.R., was visiting his godmother at the Salvation Army in Jefferson City, where she worked. He was approached by Perry Frezzell, who was then 27 years old. Mr. Frezzell asked J.R. to go to a back room with him to "check on papers," and J.R. followed Mr. Frezzell to the dormitory area of the facility. Once in the

---

1. All statutory references are to RSMo 1994 unless indicated.

dormitory area, Mr. Frezzell took off his coat, threw it on a bed, and started to search his pockets while engaging J.R. in conversation. He then leaned over and touched J.R.'s penis through his pants. J.R. started to shake in fear. Mr. Frezzell exposed J.R.'s penis and began to perform oral sex. He then told J.R. that he wanted to engage in anal intercourse with him. J.R. refused and tried to leave. Mr. Frezzell blocked the exit. Eventually, J.R. was able to push past Mr. Frezzell and flee. Crying, J.R. reported the incident to the person in charge of the facility.

The police were notified, and Officer Steven Lochhead arrived at the scene. Mr. Frezzell explained to Officer Lochhead that he had known J.R. for several days and that they both lived at the Salvation Army. According to Mr. Frezzell, he and J.R. were walking to the dormitory after dinner, discussing a bus trip to California, when they began to discuss having sex together. He then admitted to performing fellatio on J.R.

Mr. Frezzell was charged by indictment with statutory sodomy on June 21, 1996. An information in lieu of indictment was later filed, charging Mr. Frezzell as a prior offender. At his arraignment on July 12, 1996, Mr. Frezzell entered a plea of not guilty by reason of mental disease or defect excluding responsibility, and the trial court ordered a psychiatric examination and evaluation of Mr. Frezzell pursuant to sections 552.020 and 552.030. The results of the examination, filed with the court on September 4, 1996, asserted Mr. Frezzell to be competent to stand trial. The trial court subsequently sustained Mr. Frezzell's motion for a second mental examination, and a competency hearing was held on November 13, 1996. Following the hearing, the trial court found Mr. Frezzell competent to stand trial, holding that he had the capacity to understand the proceedings and assist his attorney.

At trial, Mr. Frezzell presented evidence that he suffered from paranoid schizophrenia and, as a result of the mental disease or defect, was incapable of appreciating the wrongfulness of the act for which he was charged. §§ 552.010, 552.030, and 552.040. The jury returned a guilty verdict, and Mr.

Frezzell was sentenced to four years imprisonment. This appeal followed.

## I. COMPETENCY TO STAND TRIAL

As his first point on appeal, Mr. Frezzell argues that the trial court erred in finding him competent to stand trial. Specifically, he claims the evidence adduced at the competency hearing showed that he did not have a rational understanding of the charges pending against him and that he could not rationally consult with his attorney.

At the competency hearing, both Mr. Frezzell and the State presented psychiatric testimony regarding Mr. Frezzell's competency to stand trial. Dr. A.E. Daniels, testifying on behalf of Mr. Frezzell, stated that after interviewing Mr. Frezzell and reviewing his medical records, he diagnosed him with paranoid schizophrenia and borderline intellectual intelligence based on symptoms of delusions (specifically that his food was being poisoned), erratic behavior, mood swings, high excitability, agitation, and heightened suspiciousness. In his initial report to the court, Dr. Daniels opined that Mr. Frezzell was competent to stand trial. He reported that Mr. Frezzell was sufficiently oriented, his cognitive process was reasonably intact, and he was able to discuss legal options available to him with his attorney.

Dr. Daniels then testified that he changed his opinion regarding Mr. Frezzell's competency after learning from defense counsel that a defendant's understanding must be rational as well as factual. Dr. Daniels stated Mr. Frezzell had a factual understanding of the charge against him and the roles of the prosecutor, defense attorney, judge, and jury. He further testified that Mr. Frezzell "could basically talk with his attorney to help prepare a defense." He claimed, however, that Mr. Frezzell did not have a rational understanding of the situation due to his delusions and lack of contact with reality. Thus, Dr. Daniels opined, Mr. Frezzell was incompetent to stand trial.

Dr. William Holcomb, testifying on behalf of the State, also interviewed Mr. Frezzell as part of the pretrial mental evaluation, and he, too, diagnosed Mr. Frezzell with schizophre-

nia. He testified, however, that despite the mental disorder, Mr. Frezzell was competent to stand trial, citing Mr. Frezzell's capacity to assist his attorney, his understanding of the charge pending against him, and his understanding of the consequences if he were convicted of the charged crime. Dr. Holcomb also stated that Mr. Frezzell discussed his defense with him:

Q: In terms of his ability to assist counsel, didn't he discuss the defense with you?

A: Yes, sir. I asked him what was the role of the Judge and he explained that to me. And I asked him how he would work with his attorney and he explained that to me.

And I asked him, you know, what was the role of the attorney. He said the attorney's supposed to advise me and to represent me in court. And I asked him, "Well, if your attorney were to tell you something that you didn't agree with, what would you do?" He said, "I would listen to them, but it's still my decision, but I would take my attorney's advice if I could."

Finally, Dr. Holcomb stated that despite his delusions, Mr. Frezzell had the ability to rationally understand the proceedings against him and communicate with his attorney.

■ Due process requires that a defendant may not be tried and convicted unless he is competent to stand trial. *State v. Tokar*, 918 S.W.2d 753, 762 (Mo. banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996)(citing *Medina v. California*, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)). "The principle which will not tolerate conviction of an accused who lacks capacity to consult with counsel and to understand the proceedings rests on values of public conscience-quite apart from considerations of guilt of innocence." *State v. Petty*, 856 S.W.2d 351, 353 (Mo.App.1993)(quoting *State v. Clark*, 546 S.W.2d 455, 467–68 (Mo.App.1976)).

■ A trial court's determination of competency is one of fact that must stand unless there is no substantial evidence to support it. *Petty*, 856 S.W.2d at 353. In reviewing the sufficiency of a trial court's

determination of competency, a reviewing court does not weigh the evidence but accepts as true all the evidence and reasonable inferences that tend to support the finding. *Id.* A reviewing court must determine "whether a reasonable judge, in the same situation as the trial court, should have experienced doubt about the accused's competency to stand trial." *Tokar*, 918 S.W.2d at 762–63 (quoting *Branscomb v. Norris*, 47 F.3d 258, 261 (8th Cir.1995), *cert. denied*, 515 U.S. 1109, 115 S.Ct. 2260, 132 L.Ed.2d 266 (1995)).

■ An accused is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *State v. Wise*, 879 S.W.2d 494, 507 (Mo. banc 1994), *cert. denied*, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995)(quoting *Dusky v. U.S.*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). The burden is on the accused to show that he is incompetent to stand trial. *State v. Caudill*, 789 S.W.2d 213, 215 (Mo. App.1990). The actual presence of some degree of mental illness or need for treatment does not necessarily equate with incompetency to stand trial. *Baird v. State*, 906 S.W.2d 746, 750 (Mo.App.1995).

Section 552.020 sets out Missouri's statutory procedure for determining competency to stand trial. Section 552.020.1 provides, "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." The United States Supreme Court has held that section 552.020 "is, on its face, constitutionally adequate to protect a defendant's right not to be tried while legally incompetent." *Drope v. Missouri*, 420 U.S. 162, 173, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975).

■ The evidence presented at the competency hearing was sufficient to support the finding that Mr. Frezzell was competent to stand trial. Mr. Frezzell's own expert testified that he had a factual understanding of the proceedings, the charges pending against him, and the role of the trial participants.

He also testified that Mr. Frezzell was able to talk with his attorney about his defense. The State's expert then testified that Mr. Frezzell's understanding of the proceedings, the charge against him, and the consequences if he were found guilty of the charge was rational. Dr. Holcomb further testified that Mr. Frezzell had specifically discussed some of his defense options with him and adequately explained his understanding of his attorney's role. This evidence was sufficient to show that Mr. Frezzell had the ability to consult with his attorney with a reasonable degree of rational understanding and that he possessed a rational and factual understanding of the proceedings against him. The trial court did not err in finding Mr. Frezzell competent to stand trial. Point I is denied.

## II. AFFIRMATIVE DEFENSE INSTRUCTION

In his next point on appeal, Mr. Frezzell claims that the trial court erred in refusing to submit Instruction A, which set forth the affirmative defense that he reasonably believed the victim was 17 years of age or older. He contends that the evidence adduced at trial supported submitting the affirmative defense instruction.

Mr. Frezzell was charged with second degree statutory sodomy, section 566.064. A person commits the crime of second degree statutory sodomy if "being twenty-one years of age or older, he has deviate sexual intercourse with another person who is less than seventeen years of age." § 566.064. Section 566.020 provides that "[w]henever in this chapter the criminality of conduct depends upon a child being under the age of seventeen years of age, it is an affirmative defense that the defendant reasonably believed that the child was seventeen years of age or older." The defendant's reasonable belief that the victim was seventeen years of age or older is an affirmative defense of second degree statutory sodomy. MAI–CR3d 320.13 Notes on Use 2. If this affirmative defense is raised by the defendant and from the evidence or absence of it one could reasonably infer that the defendant believed the victim was seventeen years of age or older,

language should be added to the instruction directing the jury to find the defendant not guilty if it finds and believes from the evidence that, more probably true than not, the defendant reasonably believed the victim was seventeen years of age or older. *Id.*

For an affirmative defense to be submitted to the trier of fact, it must be supported by evidence. § 556.056. A defendant is entitled to an instruction on any theory of his case that tends to be established by the evidence, no matter the source. *State v. York*, 931 S.W.2d 185, 188 (Mo.App. 1996). Thus, the question for determination is whether competent evidence sufficient to require giving the instruction was adduced at trial. Mr. Frezzell argues that the following trial testimony elicited by the State from it's expert, Dr. Holcomb, was sufficient to support the affirmative defense instruction:

Q: I'm looking at your report. Did he say that, "they'd have to prove that I knew how old"—"he's got to be 16 years of age," the victim?

A: Yes. One of the things that we have to try to determine is if—if they have a mental illness, does that mental illness significantly influence their thinking at the time of the alleged offense.

They could have a mental illness and the mental illness may not affect what they're doing at the time of the alleged offense. And with Mr. Frezzell, I went into some detail asking him what his thinking was at the time of the alleged offense.

And he said, clearly, that, you know, that the victim was older than 16. He thought the victim was over—older than 16. And he said they have to prove that I knew that the victim was underage.

So he was readily thinking, you know, what defense he would use. And so he argued not only that they have to prove that the victim—that he knew that the victim still was underage, but he went on to say that he didn't coerce the victim in any way. So, again, he was rationally thinking of all of these defenses that he could use to show that he was innocent at the time and did not commit a crime.

\*    \*    \*    \*    \*    \*

Q: Doctor, this defendant took that boy's penis and put it in his mouth for two minutes. Did he have a mental disease and defect that was active at the time?

A: No, not at the time. It was my strong opinion that at the time he was very rational. He himself said that he was rational; he was not hallucinating; he was not delusional.

He, at the time, was arguing that the boy was not underage. He was arguing that he did not coerce him.

Q: Was he coming up with defenses to use later?

A: Um, possibly so. But he was, you know, he was not at all acting as a result of any symptom of mental illness or defect.

Q: If he were—if he were not in remission, would he be able to sit around and get out of crimes, i.e.: "They have to prove the kid was 16 years old?"

A: No, I do not believe so. As I said in my report, it's my strong opinion that I think at the time he knew and appreciated the wrongfulness of his actions.

The State contends that Dr. Holcomb's testimony regarding Mr. Frezzell's statements was not competent evidence to support the affirmative defense instruction because the testimony was admitted only on the issue of whether Mr. Frezzell suffered a mental disease or defect which would absolve him from responsibility for the crime. The State's contention is correct.

Section 552.030 governs the defense of mental disease or defect. It provides that no statement made by a defendant in the course of a psychiatric examination shall be admitted in evidence against the accused on the issue of whether he committed the act charged against him. § 552.030.5. A defendant's statements shall be admissible in evidence for or against him only for the limited purpose of addressing his mental condition. *Id.* When a defendant's statement is admitted on the issue of his mental condition, the court shall instruct the jury that it must not consider the statement as any evidence of whether the defendant committed the act charged against him. *Id.*

At his arraignment, Mr. Frezzell pleaded not guilty by reason of mental disease or defect excluding responsibility, and the court ordered a psychiatric evaluation pursuant to sections 552.020 and 552.030. Dr. Daniels and Dr. Holcomb examined Mr. Frezzell and testified at trial. Dr. Holcomb testified that he examined Mr. Frezzell to determine if mental illness influenced his thinking at the time of the alleged offense. In stating his opinion that Mr. Frezzell did not suffer from a mental disease or defect at the time of the offense, Dr. Holcomb reasoned that Mr. Frezzell was rational in that he was "readily thinking of his possible defenses." Dr. Holcomb's testimony regarding Mr. Frezzell's statement about the victim's age was admitted for the limited purpose of explaining to the jury that Mr. Frezzell was rational and not suffering from a mental disease or defect at the time of the offense. Mr. Frezzell proposed to use this testimony as evidence of his state of mind at the time of the alleged offense, specifically his belief that J.R. was seventeen years of age or older. Just as a defendant's statement made during a psychiatric evaluation pursuant to section 552.020 and 552.030 is inadmissible against the defendant to prove he committed the charged act, section 552.030.5, a defendant may not utilize a statement made to a psychiatrist conducting a psychiatric evaluation as provided by sections 552.020 and 552.030 to prove an affirmative defense. Such statement is admissible "only on the issue of mental condition," section 552.030.5, and the defendant's state of mind as to whether he believed the victim was seventeen years of age or older is not the same issue as his mental condition. Dr. Holcomb's testimony regarding Mr. Frezzell's statements, therefore, was insufficient to support the affirmative defense instruction requested that Mr. Frezzell reasonably believed the victim was seventeen years of age or older. The trial court did not err in refusing to submit Mr. Frezzell's Instruction A. Point II is denied.

## III. MENTAL DISEASE OR DEFECT INSTRUCTION

In his final point on appeal, Mr. Frezzell claims that the trial court erred in submitting the parenthetical language in In-

struction No. 8, patterned after MAI–CR3d 306.02A, because it was not supported by the evidence. The disputed language states that a mental disease or defect "does not include an abnormality manifested only by repeated antisocial conduct." Mr. Frezzell argues that all of the experts diagnosed him with a psychotic disorder or mental disease, not an antisocial disorder.

The applicable note to the patterned instruction states that the parenthetical material may be submitted to the jury "only if there is testimony that defendant had an abnormality manifested only by repeated antisocial conduct." MAI–CR3d 306.02A, Notes on Use 5. Inclusion of the parenthetical phrase serves to clarify the law for the jury by distinguishing between conditions when there is evidence of the parenthetical exception and mental disease or defect. *State v. Henderson,* 824 S.W.2d 445, 449 (Mo.App.1991).

Evidence was presented in this case that Mr. Frezzell demonstrated that he suffered from both a mental disease or defect and an abnormality manifested by antisocial conduct. Dr. Daniels and Dr. Holcomb testified that Mr. Frezzell suffered from paranoid schizophrenia. The record further reveals that from June to October 1996, while Mr. Frezzell was in custody pending trial, he was transferred from jail to the Fulton State Hospital six times because of agitation and uncontrollable behavior. Dr. Ahsan Syed, Mr. Frezzell's treating psychiatrist at the hospital, testified that although he initially diagnosed Mr. Frezzell with psychotic disorder not otherwise specified, he began to suspect an antisocial element to Mr. Frezzell's behavior during his second admission to the hospital. Dr. Syed stated that he suspected Mr. Frezzell of manipulation when, upon his arrival at the hospital, Mr. Frezzell's aggressive behavior displayed in jail disappeared. He also testified that Mr. Frezzell told hospital staff that he was returning to the hospital because he "needed a break from jail." Dr. Syed's testimony was sufficient evidence of Mr. Frezzell's antisocial conduct, and the parenthetical information in the instruction distinguished for the jury the evidence of mental disease or defect and antisocial behavior. The trial court, therefore, did not err in including the parenthetical language in the mental disease or defect instruction. Point III is denied.

The judgment of conviction is affirmed.

All concur.