STATE of Missouri, Respondent,

v.

Gerald M. ELAM, Appellant.

No. WD 59349.

Missouri Court of Appeals,
Western District.

May 21, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 2, 2002.

Application for Transfer Sustained Aug. 27, 2002.

Case Transferred Nov. 26, 2002.

Court of Appeals Opinion Readopted Dec. 10, 2002.

Kent Denzel, Columbia, for Appellant.

John M. Morris, III, Karen L. Kramer, Jefferson City, for Respondent.

Before BRECKENRIDGE, P.J., NEWTON and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Gerald Elam was convicted by jury of first-degree murder, armed criminal action, and second-degree arson. On appeal, he claims the trial court erred in finding him competent to stand trial and in failing to declare a mistrial *sua sponte* based on the State's improper closing arguments. We affirm the trial court's judgment.

**Factual and Procedural History**

We review the facts in a light most favorable to the jury's verdict. Sometime between late evening June 2, 1997, and the early morning hours of June 3, 1997, Appellant Gerald Elam (Elam) stabbed and killed his eighty-seven year old grandfather, Minis Elam, in the grandfather's home. Elam then set a fire and left his grandfather's body in the burning home. Neighborhood residents, as well as a trucker, saw Elam leaving the scene.

Police later questioned Elam about his grandfather's death and the fire. Elam initially offered different theories about the death but eventually confessed to stabbing his grandfather, alleging self-defense. He also admitted starting the fire in order to cover up evidence of his grandfather's murder. Elam told investigators he believed his grandfather was the devil.

Elam was arrested and charged with first-degree murder, armed criminal action, and second-degree arson. Based on his statements during interrogations, Elam was sent to Fulton State Hospital for a preliminary psychiatric evaluation. On September 25, 1997, the court ordered a full pretrial evaluation of Elam's mental competency to stand trial.

Dr. John Zimmerschied, a psychiatrist and certified forensics examiner, evaluated and diagnosed Elam with "schizoaffective disorder, bipolar type." Dr. Zimmerschied concluded that as a result of this mental disease, Elam was unable to understand the legal proceedings against him and/or assist in his own defense. The court thereupon found Elam incompetent for trial on the criminal charges and committed him to the Department of Mental Health (DMH) on September 9, 1998.

On May 5, 1999, the State filed a motion to proceed with the criminal charges against Elam. The motion was premised upon an April 1999 evaluation and report by two DMH psychologists, who determined that Elam's mental condition had improved. The psychologists concluded Elam was competent to proceed to trial and should "remain on his current medication regime." Sometime thereafter, the court scheduled a trial for October 2, 2000, on Elam's criminal charges.

On September 13, 2000, Elam filed a motion to stay proceedings based on an independent competency evaluation by Dr. Rosalyn Inniss, a psychiatrist he retained. Dr. Inniss concurred with Dr. Zimmerschied's diagnosis of schizoaffective disorder, bipolar type, and further found Elam suffered from paranoid schizophrenia. At a hearing on the motion to stay, Dr. Inniss testified that Elam was "limited in his ability to fully understand the proceedings" and "would be most challenged in ... being able to give reasonable assistance to counsel in the process of his own defense."

The State countered Dr. Inniss' testimony with the April 1999 DMH psychologists' report, which concluded Elam understood the charges against him and was sufficiently competent to assist in his defense. The State also presented testimony from Police

Sergeant Mike Platte, who witnessed Elam's conduct at a prior suppression hearing. Sgt. Platte testified that Elam smiled during Dr. Zimmerschied's testimony about his incompetence and then glared when the judge denied the motion to suppress. The State argued that Elam's responses indicated he understood the nature of the proceedings.

Following the hearing, the court denied the motion to stay and found Elam competent to proceed to trial. The court ruled:

The defendant is presumed to have the mental capacity and fitness to proceed. The defendant has not proven by a preponderance of the evidence that he does not have the mental fitness to proceed. The exhibits admitted as well as the testimony together with the Court's observations of the defendant and the record in this cause belies any allegation that the defendant is unable to assist in his defense. He has been articulate and aware of his circumstances and has so far become involved beyond the usual in the defense of [this] case. Court finds there is nothing in the record, in the statements of the defendant, in his correspondence to the Court, that would indicate any mental disease or defect or inability to proceed.

The cause went to jury trial on October 2, 2000. Elam was convicted on all charges and consecutively sentenced to life imprisonment without the possibility of parole for first-degree murder, life imprisonment for armed criminal action, and seven years imprisonment for second-degree arson. He appeals.

### Competency Determination

In his first point, Elam claims the trial court erred in finding him competent to stand trial. He argues the ruling was not supported by substantial evidence because he suffered from schizoaffective disorder, bipolar type, and paranoid schizophrenia, which rendered him unable assist in his own defense and rationally understand the legal proceedings.

■■■ The trial court's ruling on the competency of a defendant is a factual determination which must be upheld unless there is no substantial evidence to support it. *State v. Frezzell*, 958 S.W.2d 101, 104 (Mo.App. W.D.1998). The reviewing court does not weigh the evidence but accepts as true all the evidence and reasonable inferences that tend to support the trial court's findings. *Id.* We must determine "whether a reasonable judge, in the same situation as the trial court, should have experienced doubt about the accused's competency to stand trial." *State v. Tokar*, 918 S.W.2d 753, 762–63 (Mo. banc 1996).

■■■ An accused is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *State v. Wise*, 879 S.W.2d 494, 507 (Mo.banc 1994), cert. denied, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995). The burden is on the accused to prove incompetence. *State v. Caudill*, 789 S.W.2d 213, 215 (Mo.App. 1990). The actual presence of some degree of mental illness or need for treatment does not necessarily indicate legal incompetence for purposes of trial. *Frezzell*, 958 S.W.2d at 104. Thus, a defendant may be diagnosed with a mental disease and still be declared competent to stand trial. *Id.* at 104–105.

Missouri's statutory procedure to determine competence to stand trial is set forth in § 552.020 RSMo, which states: "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his

own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." The United States Supreme Court has recognized that § 552.020 is constitutionally adequate to protect a defendant's right not to be tried while legally incompetent. *Drope v. Missouri*, 420 U.S. 162, 173, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

■ There is substantial evidence in the record to support the trial court's finding that Elam was competent to proceed to trial. At the hearing on the motion to stay proceedings, the State presented a report from two psychologists, Dr. Hossein Mojdehi and Dr. Michael Stacey, who evaluated Elam during his DMH commitment. The psychologists interviewed Elam over a three-week period for a total of three-and-a-half hours and reviewed his medical records, which included police reports of his charged criminal offenses.

Based on their evaluation, Drs. Mojdehi and Stacey concluded that Elam suffered from a schizoaffective disorder, bipolar type, but was nonetheless able to understand, appreciate the significance of, and participate in the criminal legal proceedings. Their report, as submitted in evidence, stated:

Mr. Elam verbalized adequate understanding of the criminal charges against him and an appreciation of the legal process. He correctly named all four charges against him, identified each charge by its class and mentioned the range of penalty if convicted of any of those. He specifically verbalized the gravity of the sentence. He also indicated a full understanding of the plea process including the option of an NGRI defense. Although he talked of the prospect of "acquittal" in case he got a "competent" jury to "understand" that he acted in "self-defense," when he was specifically asked what he would do if his legal counsel recommended an NGRI plea, Mr. Elam stated that he would accept it. . . .

In brief, it appears that Mr. Elam's mental disease at the present time does not have a significant bearing on his appreciation of his legal status or his ability to work out a defense strategy. It is, therefore, the opinion of the undersigned with a reasonable degree of psychological certainty that he presently possesses the capacity to understand the proceedings against him and to assist in his own defense.

On appeal, Elam contends the April 1999 report from the DMH psychologists was more than a year old at the time of the September 2000 hearing on his motion to stay proceedings, and that the report's competency finding was based on the assumption Elam would continue his medication. Dr. Inniss testified that Elam had not continued his medication since being released from DMH commitment and returned to jail in June 1999, after the DMH report was received by the court. Thus, Elam argues the April 1999 report was not probative evidence of his competency to proceed to trial in September 2000.

Upon review of the DMH report, we do not find that the psychologists' conclusions regarding competency were conditioned upon medicational requirements. In fact, the section of the report discussing competency does not refer to medication at all. Although the final section of the report recommends continued medication, it does not in any way state that Elam is or will be incompetent without such medication.

Moreover, the trial court did not premise its September 2000 competency finding solely on the 1999 DMH report. The trial judge had the opportunity to observe Elam in the courtroom in September 2000 and review his conduct from the records of

other case proceedings. The court found Elam to be "articulate and aware of his circumstances" and "involved beyond the usual in the defense of his case." The court thereupon concluded, "there is nothing in the record, in the statements of the defendant, in his correspondence to the Court, that would indicate any mental disease or defect or inability to proceed." The court made this determination at a time when Elam reportedly had not taken his medication in fourteen months.

Although Elam presented testimony from his own retained expert regarding his incompetency, the court did not find Dr. Inniss' opinion persuasive. One possible reason for this is that Dr. Inniss testified to a general conclusion that Elam was delusional and, therefore, might have difficulty assisting his attorney. This testimony compared unfavorably to the trial judge's observations of the defendant, and the detailed 1999 DMH report regarding Elam's comprehension of the criminal charges against him and the procedural nature of the case. The trial court also heard testimony from Sgt. Platte, who witnessed Elam's conduct during a hearing. Elam exhibited his rational understanding of the legal proceeding, as he smiled during the testimony about his alleged incompetence and glared when the court ruled against him. The totality of evidence was sufficient to convince the court that Elam failed to prove his mental disease rendered him incompetent to stand trial on the criminal charges.

We must defer to the trial court's factual determinations, as it is in the best position to assess the credibility of those testifying and weigh the evidence accordingly. *State*

*v. Weeks,* 982 S.W.2d 825, 833 (Mo.App. S.D.1998). The trial court's competency finding is supported by substantial evidence in the record. Point I is denied.

### Plain Error Review of Prosecutor's Remarks

In his second and third points, Elam contends the trial court erred in failing to declare a mistrial *sua sponte* based on inflammatory and prejudicial remarks by the prosecutor during closing arguments. Because he failed to object to the prosecutor's remarks at trial, Elam seeks plain error review for manifest injustice pursuant to Rule 30.20.[1]

Missouri courts have recognized that relief should rarely be granted on an assertion of plain error with respect to closing argument. *State v. Clemmons,* 753 S.W.2d 901, 907 (Mo.banc), cert. denied 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). A defendant's failure to object during closing argument is more likely a function of trial strategy than error. *State v. Boyd,* 844 S.W.2d 524, 529 (Mo.App. E.D.1992). Even if the prosecutor's remarks are improper, a conviction will be reversed only where it is determined that the remark decisively affected the jury's verdict. *State v. Winfield,* 5 S.W.3d 505, 516 (Mo.banc 1999).

Elam advanced an insanity defense at trial. During closing arguments, defense counsel urged the jury to find the defendant not guilty by reason of insanity. The prosecutor stated in rebuttal:

> ... they want Gerald to go to a mental hospital. Let me tell you something.

---

1. Rule 30.20, states in relevant part: "Allegations of error that are not briefed or are not properly briefed on appeal shall not be considered by the appellate court except errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence. Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

He will be allowed to play cards with other inmates. He will be allowed to watch T.V. He won't fester there. He gets treatment for whatever problems he has. If we didn't treat him, you know what? There would be lawsuit after lawsuit about his constitutional rights, and when Mr. Reed says he'll go to a mental hospital, he can get out of that mental hospital, and do you know when he could get out of it? Before you and I get home from here. He could be in there for the rest of his life but he could get out that quick. You know how he gets out of there? He gets a psychiatrist to come into court and say, "You know what, Gerald is cured." ...

Elam argues the prosecutor misstated the law because there is no provision under Missouri's insanity defense statute, § 552.030, allowing immediate release of a person acquitted of murder without court order. He further claims the remarks improperly commented on his future dangerousness, leading the jury to convict him for irrelevant reasons. He contends the trial court should have granted a mistrial *sua sponte* to protect his constitutional right to a fair trial.

■ Although the prosecutor's comments oversimplified and exaggerated the post-trial procedures for a defendant acquitted by reason of insanity, we find it unlikely that jurors actually believed Elam could be set free from a mental hospital on the same day the trial ended. The prosecutor noted that a doctor would have to come back to court and report that Elam was cured of his mental illness before he could be released. Additionally, the jury was instructed, pursuant to MAI–CR 30.02A, regarding the possibility of release if the defendant was found not guilty by reason of insanity. The trial judge read the following instruction at trial:

When a person is found not guilty by reason of mental disease or defect excluding responsibility, the Court must order that person committed to the Director of the Department of Mental Health for custody and care in a state mental health or retardation facility. This person can be unconditionally released from commitment only if and when it is determined by the Court that the person does not have, and in the reasonable future, is not likely to have, a mental disease or defect rendering him dangerous to the safety of himself or others. This person can be conditionally released from such custody only if and when it is determined by a Court that he is not likely to be dangerous to others while on conditional release.

■ We are also unpersuaded that the prosecutor's remarks commented on Elam's future dangerousness. There is no reference in the remarks to any possible criminal act that Elam might commit if released. The prosecutor's argument focused on the concept that the defendant would not have to serve prison time for the murder and arson if acquitted by reason of insanity, and instead he would receive more favorable treatment as a hospital patient or be released to live without impunity as though he committed no crime. While the extent of hyperbole was inappropriate, the substance of the prosecutor's remarks constituted a legitimate point of argumentation in light of the insanity defense. As such, the remarks did not unfairly influence the jury's verdict.

■ Elam also challenges the prosecutor's rebuttal to defense counsel's closing argument regarding discrepancies in the testimony of three of the State's witnesses. Defense counsel argued that two witnesses testified Elam was not at his grandfather's home around the time the fire was started, while another witness, Stephen McQuinn,

implicated Elam in setting the fire. The prosecutor responded:

> ... if you believe their testimony when talking about the State's witnesses, you should believe Mr. McQuinn when he talks about the devil but don't believe him when he talks about setting the fire twice. If you believe their testimony, the only person that he didn't ask that question about, you know who that was. Sure you do.

On appeal, Elam contends the prosecutor's remark was an improper reference to his failure to testify.

■ "The Fifth Amendment to the United States Constitution, Article I, section 18 of the Missouri Constitution, section 546.270, RSMo 1994, and Supreme Court Rule 27.05(a) grant criminal defendants the right not to testify and forbid comments by either party concerning the exercise of that right." *State v. Barnum,* 14 S.W.3d 587, 591 (Mo. banc 2000). Section 546.270 states in pertinent part: "If the accused shall not avail himself ... of his ... right to testify ... it shall not ... be referred to by any attorney in the case ..." *Id.* "The purpose of this rule is to avoid focusing the jury's attention upon a defendant's failure to testify." *Id.* at 591–592. Under § 546.270, it is error to directly or indirectly allude to a defendant's failure to testify on his own behalf at any point during trial. *Id.* at 592.

■ "[The Supreme Court of Missouri], however, has never held that a mistrial is always required after a direct reference by an attorney to a defendant's right to testify." *Id.* "Whether a particular improper argument is so prejudicial under the facts in a particular case, as to necessitate a reprimand of counsel or a discharge of the jury, is largely within the discretion of the trial court." *Id.*

The State disputes that the prosecutor's remark was a reference to the defendant's failure to testify. Rather, the State contends that remark referred to Dr. Inniss, the primary defense witness. In response to defense counsel's allegation of inconsistent testimony among the State's witnesses, the prosecutor's comment was intended to point out that the defense glossed over its own witness' discrepancy: although Dr. Inniss testified that Elam was incompetent to stand trial, she also agreed that his actions indicate the possibility that he understands and appreciates the nature, quality and wrongfulness of his criminal acts.

It is difficult to discern from the record whether the prosecutor's comment referred to Elam or Dr. Inniss. At most, the comment could be considered an indirect reference to Elam's failure to testify that would require reversal only if there was calculated intent to magnify that decision so as to call it to the jury's attention. *State v. Neff,* 978 S.W.2d 341, 344 (Mo. banc 1998). We find no such intent in this single, ambiguous comment which responds to the defense's allegation of inconsistent testimony and does not place extraordinary focus on the defendant.

■ We further find no error in the trial court's failure to grant a mistrial *sua sponte* because any alleged prejudice from either of the prosecutor's remarks could have been cured through less intrusive means. Mistrial is a drastic and disfavored remedy because it can interfere with trial strategy and may result in double jeopardy consequences. See *Neff,* 978 S.W.2d at 347; *State v. Marlow,* 888 S.W.2d 417, 420 (Mo.App. W.D.1994); *State v. Albanese,* 9 S.W.3d 39, 54 (Mo. App. W.D.1999). Typically, an admonition to the jury can cure the prejudicial effects of prosecutorial comments. *State v. Nolen,* 872 S.W.2d 660, 662 (Mo.App. S.D. 1994).

**526**

A party cannot fail to request relief, gamble on the verdict, and then, if adverse, request relief for the first time on appeal. *State v. McGee*, 848 S.W.2d 512, 514 (Mo.App. E.D.1993). Elam failed to object and thereby deprived the court of an opportunity to instruct the jury regarding the prosecutor's remarks. In the absence of an objection, the trial court reasonably exercised its discretion to avoid uninvited interference in the closing arguments and increase the possibility of error. *State v. Clemmons*, 753 S.W.2d at 907–908. Points II and III are denied, as no manifest injustice occurred.

The judgment of the trial court is affirmed.

All concur.