# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3465

_____

Gerald Elam,

    Appellant,

v.

Larry Denney,

    Appellee.

Appeal from the United States
District Court for the
Western District of Missouri.

_____

Submitted: September 19, 2011
Filed: December 8, 2011

_____

Before LOKEN, BEAM, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Gerald Elam was convicted in Missouri state court and sentenced to life in prison for the first degree murder of his grandfather, armed criminal action, and second-degree arson. The Missouri Court of Appeals affirmed, rejecting Elam's contention that the trial court erred in finding him competent to stand trial. State v. Elam, 89 S.W.3d 517, 522 (Mo. Ct. App. 2002). Elam moved for post-conviction relief on many grounds, including a claim that trial counsel provided ineffective assistance by failing to call two mental health professionals to testify at a pretrial competency hearing. The state trial court denied relief after an evidentiary hearing, and the Missouri Court of Appeals again affirmed. Elam v. State, No. WD 67298

(Jan. 8, 2008). Elam now appeals the district court's[1] denial of his petition for a federal writ of habeas corpus, arguing that the state courts erred in finding him competent to stand trial, and in concluding that trial counsel's failure to call the mental health professionals was not constitutionally defective performance. We affirm.

## I. Competency

The State charged Elam with murder and arson after he confessed that he stabbed his grandfather to death and set his grandfather's house on fire because he believed his grandfather was the Devil. At the trial court's direction, Elam was committed to Fulton State Hospital (FSH) for a preliminary psychiatric evaluation. See Mo. Rev. Stat. § 552.020(2). In March 1998, state psychiatrist John Zimmerscheid diagnosed Elam as having "schizoaffective disorder, bipolar type," based on his bizarre delusions and at least one manic episode. Dr. Zimmerscheid opined that Elam was not competent to stand trial because he was unable to understand the legal proceedings against him or assist in his own defense. His report stated: "there is a substantial probability [Elam] will be mentally fit to proceed in the reasonably foreseeable future, provid[ed] a course of treatment is undertaken including pharmacological therapy for his thought disorder." The court committed Elam to the Missouri Department of Mental Health. See Mo. Rev. Stat. § 552.020(5), (9). He was readmitted to FSH and placed on a daily regimen of an anti-psychotic medication, Olanzapine.

In April 1999, FSH Psychologist Hossein Mojdehi submitted a lengthy report that FSH Forensic Examiner Michael Stacey reviewed and supervised. Dr. Mojdehi described his three interviews with Elam, six months of treatment with Olanzapine,

---

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

and the progress FSH staff had observed. Although Elam continued to voice thoughts regarding the homicide that "reflect delusional ideations," Dr. Mojdehi reported that Elam understood the charges against him and the penalties if convicted. The report further stated that Elam believed he acted in self-defense and that the police had tricked him into signing a confession, but he would "accept it" if his attorney recommended a plea of not guilty by reason of insanity. Dr. Mojdehi opined that Elam "presently possesses the capacity to understand the proceedings against him and to assist in his own defense" and recommended that the court return Elam to the Macon County jail for trial, where he "should remain on his current medication regime." The State then filed an unopposed motion to proceed. The trial court sent Elam from FSH to the Macon County jail and later to the Livingston County jail to await trial. See Mo. Rev. Stat. § 552.020(10).

In August 2000, Elam filed motions to suppress his incriminating statements and to enter a plea of not guilty by reason of insanity. One month later, on the eve of trial, he filed a motion to stay proceedings, informing the court that he "ha[d] not followed the regimen of medication which resulted in a finding of fitness to proceed," and that Dr. Rosalynn Inniss, an expert who would support the insanity defense, "has advised that her preliminary findings indicate that Mr. Elam . . . lacks the capacity to understand the proceedings against him and to assist in his own defense." On September 19, the trial court held a hearing on the motion to suppress but deferred taking up the motion to stay proceedings because Dr. Inniss was unavailable. At that hearing, Dr. Zimmerschied testified that, at the time Elam confessed, he was suffering from schizoaffective disorder, bipolar type. As a result of delusions concerning his grandfather, Dr. Zimmerschied opined that Elam "probably was confused on the nature and quality of his actions" but understood they were wrongful. The court denied the motion to suppress, finding that the confessions were voluntary. It allowed an insanity plea, which Elam entered on September 21.

The court held an evidentiary competency hearing on September 26, 2000. In support of his motion to stay proceedings (the trial), Elam called Dr. Inniss, who testified that she had conducted five interviews with Elam and had reviewed his police, medical, and legal records. Dr. Inniss confirmed Elam's diagnosis of schizoaffective disorder, bipolar type, and then opined that he was "limited in the ability to fully understand the proceedings . . . [and] would be most challenged in the area of being able to give reasonable assistance to counsel in the process of his own defense." She attributed Elam's decline to his failure to take Olanzapine for over a year. Over the course of her five interviews, she had observed his "delusions broaden and become more intrusive" to the point where "[h]is total defense is delusion based."

In response, the State placed in evidence Dr. Zimmerscheid's March 1998 report, Dr. Mojdehi's April 1999 report, and six letters Elam had written from jail during the pretrial proceedings. In addition, Sergeant Michael Platte testified that he remained in the courtroom after testifying at the suppression hearing and saw Elam turn and smile when Dr. Zimmerschied testified about competency and then turn and glare when the court denied the motion to suppress. Elam, 89 S.W.3d at 522-23. The trial court denied the motion to stay proceedings, explaining:

> The defendant is presumed to have the mental capacity and fitness to proceed. The defendant has not proven by a preponderance of the evidence that he does not have the mental fitness to proceed. The exhibits admitted as well as the testimony together with the Court's observations of the defendant and the record in this cause belies any allegation that the defendant is unable to assist in his defense. He has been articulate and aware of his circumstances and has so far become involved beyond the usual in the defense of [h]is case. The Court finds there is nothing in the record, in the statements of the defendant, in his correspondence to the Court that would indicate any mental disease or

-4-

defect or inability to proceed. The Court, therefore, overrules the defendant's motion to stay proceedings under Section 552.020(1).

Elam's trial took place from October 2 through October 4, 2000. The record contains no further motion, objection, or colloquy regarding his competency and no reference to irrational or disruptive behavior during the trial.

On direct appeal, the Missouri Court of Appeals rejected Elam's contention that the trial court erred in finding him competent. Elam bore the burden of proving incompetence, the court explained, and substantial record evidence supported the trial court's factual finding -- the opinion of Drs. Mojdehi and Stacey "that Elam suffered from a schizoaffective disorder, bipolar type, but was nonetheless able to understand, appreciate the significance of, and participate in the criminal legal proceedings," an opinion that was not "conditioned upon medicational requirements"; the trial court's ability to view Elam in the courtroom during the September 2000 hearings and review his conduct as reflected in other court records; Elam's pretrial involvement "beyond the usual" in his defense, including correspondence with the court; and Sergeant Platte's testimony. Elam, 89 S.W.2d at 522-23.

On appeal, Elam argues, as he did to the district court, that the state court competency finding was contrary to the federal constitutional principle "that the criminal trial of an incompetent defendant violates due process." Medina v. California, 505 U.S. 437, 453 (1992). A federal court may grant habeas relief only if a state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." King v. Kemna, 266 F.3d 816, 821

(8th Cir. 2001) (quotations omitted), <u>cert. denied</u>, 535 U.S. 934 (2002); <u>see</u> 28 U.S.C. § 2254(d)(1)-(2).

Like the district court, we conclude that Elam cannot satisfy this rigorous standard. Both the trial court and the Missouri Court of Appeals applied the Supreme Court's clearly established competency standard: "A defendant may not be put to trial unless he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 354 (1996) (quotation omitted). Applying Missouri law, the state courts presumed Elam was competent and imposed on him the burden to prove incompetence by a preponderance of the evidence, standards expressly upheld in <u>Cooper</u>, 517 U.S. at 355. Elam argues the Missouri Court of Appeals violated the rule that a defendant may not be required to prove incompetence by clear and convincing evidence, <u>Cooper</u>, 517 U.S. at 369, because the Court noted that it must uphold the trial court's finding "unless there is no substantial evidence to support it." <u>Elam</u>, 89 S.W.3d at 521. But this contention confuses proof of incompetency with appellate review standards. Competency is a question of fact, and the Court of Appeals was simply reciting the familiar clear error standard of appellate review under Missouri law.

Elam primarily argues that the state court decision was based on an unreasonable fact determination under 28 U.S.C. § 2254(d)(2) because four mental health experts -- Drs. Zimmerscheid, Mojdehi, Stacey, and Inniss -- unanimously agreed that Elam's competency hinged upon continuing daily doses of antipsychotic medication. That is certainly true as to Dr. Inniss, who testified at the competency hearing that Elam was so delusional that he could not assist in his defense because he had not been taking Olanzapine for "over a year." Dr. Inniss's testimony was supported by the competency report of Drs. Mojdehi and Stacey, which opined that

Elam was competent but recommended that he "remain on his current medication regimen," and by Dr. Zimmerscheid's earlier report, which predicted that Elam's competency would be restored by medication.  However, as the Missouri Court of Appeals noted, the report of Drs. Mojedi and Stacey did not opine that Elam would only remain competent if he continued taking Olanzapine, and Dr. Zimmerschied's report did not address that question at all.  Thus, the central premise of Elam's argument -- there was "unanimous expert opinion that [Elam] was incompetent without his medication" -- seriously overstates the record at the competency hearing.

Like other fact determinations, a state court finding that the defendant was competent to stand trial is "presumed to be correct" in a federal habeas proceeding. 28 U.S.C. § 2254(e)(1); see Lyons v. Luebbers, 403 F.3d 585, 593 (8th Cir. 2005).[2] We agree with the district court that the state court competency finding was not an unreasonable determination of fact in light of the evidence presented at the competency hearing.  After the long pretrial delay, counsel's motion to stay proceedings certainly warranted renewed inquiry into whether Elam would be competent at the impending trial.  At that hearing, Dr. Inniss testified, without contradiction, that Elam had become more delusional because of an unexplained fourteen-month failure to continue medication.  But the trial court was not constitutionally required to give Dr. Inniss's opinion about how these delusions would affect Elam's ability to assist at trial more weight than the other evidence -- the competency report of Drs. Mojdehi and Stacey, the court's own observations of Elam in court, Sergeant Platte's testimony describing Elam's behavior at the suppression

---

[2]The Supreme Court recently granted certiorari but ultimately did not resolve a conflict among the circuits regarding "whether, in order to satisfy § 2254(2)(d), a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence."  Wood v. Allen, 130 S. Ct. 841, 848-49 (2010).  In this case, Elam failed to satisfy either standard.

hearing, and the court's knowledge of his extensive pretrial participation in the defense. Dr. Inniss's ultimate opinion as to Elam's *legal* competency was highly relevant, but not dispositive.

In our view, the timing and limited nature of the trial court's ruling are also highly relevant. On the eve of a long-delayed criminal trial, the court was properly concerned about further delay. Moreover, the court knew it would have a continuing opportunity -- indeed, a duty -- to suspend the trial and conduct further competency proceedings, either at counsel's request or *sua sponte*, if Elam's behavior or demeanor combined with the prior medical evidence suggested "a change that would render the accused unable to meet the standards of competence to stand trial." Drope v. Missouri, 420 U.S. 162, 181 (1975); see Reynolds v. Norris, 86 F.3d 796, 800-01 (8th Cir. 1996). The court ruled only that, based on the September 26 hearing record, Elam had not met his burden to prove incompetency. Nothing precluded counsel or the court from revisiting the issue. Significantly, Elam has never argued that any circumstance following the denial of the motion to stay proceedings should have triggered further inquiry, and our own review of the record reveals nothing suggesting that Elam's behavior or demeanor at trial cast doubt on his competency, or that counsel again raised the issue, for example, when Dr. Inniss testified at trial in support of Elam's insanity defense.

## II. Ineffective Assistance of Counsel

Alternatively, Elam argues that he was denied his constitutional right to the effective assistance of counsel because trial counsel failed to call Drs. Zimmerschied and Mojdehi to testify at the September 26, 2000 hearing to support Dr. Inniss's opinion that Elam's fourteen-month failure to take daily Olanzapine medication had caused him to become incompetent to stand trial. In denying Elam post-conviction relief on this claim, the state courts correctly applied the well-established federal

standard: to prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's performance was deficient and that [he] was prejudiced by the deficient performance." King, 266 F.3d at 822, citing Strickland v. Washington, 466 U.S. 668, 687 (1984).

Based upon Dr. Zimmerschied's deposition testimony the day before the September 26 hearing, and Dr. Mojdehi's March 2006 deposition testimony in connection with Elam's motion for post-conviction relief, the state courts assumed, as do we, that both doctors would have testified at the competency hearing, consistent with their earlier reports, that it was important if not essential that Elam continue to take Olanzapine. At the post-conviction hearing, Elam's trial attorney explained why he did not call Drs. Zimmerschied and Mojdehi at the pretrial competency hearing:

> Q. Did you have any particular reason why you did not call and utilize Dr. Zimmerschied in support of your motion to stay hearing proceedings under 522?
>
> A. As I recall, Dr. Zimmerschied hadn't seen Mr. Elam for some time, and Dr. Inniss had spent some time with Mr. Elam at the Livingston County jail recently.
>
> *   *   *   *   *
>
> Q. . . . [S]itting here today, do you have any recollection as to whether you had a reason for not calling Dr. Mojdehi to testify at the motion to stay hearing proceedings under 552?
>
> A. . . . I didn't think I needed him. I had Dr. Inniss.
>
> *   *   *   *   *
>
> Q. Did you feel that it was necessary to have any [] doctors in addition to Dr. Inniss testifying [] at the . . . hearing to stay proceedings?

A.  I did not believe so because [Dr. Inniss] would be the sole, uncontroverted witness at that hearing.

The state trial court denied Elam's claim, concluding that he failed to prove that trial counsel's performance was deficient.  The decision not to call these experts was reasonable trial strategy, the court explained, because they had not seen Elam recently and their testimony about Elam's need for continuing medication would be cumulative to Dr. Inniss.  The Missouri Court of Appeals upheld this analysis, agreeing that, in attempting to prove Elam currently incompetent, "it seems reasonable that [trial counsel] would select the psychiatrist who had examined Elam most recently."  In response to Elam's contention that the failure to call Dr. Mojdehi resulted in the state trial court misinterpreting his April 1999 report [a fact assertion we rejected in Part I of this opinion], the Court of Appeals held that Elam failed to prove a need to clarify the reports of either Dr. Zimmerschied or Dr. Mojdehi.

In a thorough opinion, the district court concluded that the state courts had not unreasonably applied the law or determined the facts in denying Elam's claim.  The court agreed with the state courts that the testimony of Drs. Zimmerschied and Mojdehi would have been cumulative to that of Dr. Inniss and correctly observed that "failure to present cumulative evidence does not constitute ineffective assistance of counsel."  See Winfield v. Roper, 460 F.3d 1026, 1033 (8th Cir. 2006); Bucklew v. Luebbers, 436 F.3d 1010, 1019-20 (8th Cir. 2006).  Alternatively, the district court concluded that Elam failed to prove the requisite prejudice because, even if testimony by these doctors would have made Dr. Inniss's testimony more persuasive, the other evidence on which the trial court relied in denying a stay of proceedings "provided sufficient evidence that [Elam] was competent to stand trial."

On appeal, Elam argues that the state courts unreasonably applied Strickland in denying his ineffective assistance claim, focusing primarily on one aspect of the

Missouri Court of Appeals competency analysis:  "trial counsel's failure to call Dr. Zimmerschied and Dr. Mojdehi to clarify the substance of their prior reports allowed the Missouri Court of Appeals to affirm the competence finding of the trial court," Elam asserts, "because it was not sufficiently clear to the Court of Appeals that the FSH doctors believed that daily medication was essential for appellant to remain competent."  Therefore, Elam argues, he satisfied <u>Strickland</u>'s deficient performance standard because counsel's failure to call these witnesses fell "outside the wide range of professionally competent assistance."  466 U.S. at 690.

As we noted in Part I of this opinion, this argument is based upon a flawed view of the trial court's competency ruling and the decision upholding that ruling on direct appeal.  Dr. Zimmerschied's report plainly stated that Elam was then incompetent but might be restored to competency by treatment that included antipsychotic medication. Dr. Mojdehi's report plainly stated that competency had been restored but cautioned that Elam should "remain on his current medication regime."  The issue facing the trial court many months later was whether Elam's failure to remain on that regime rendered him incompetent to stand trial as scheduled.  Dr. Inniss testified that, due to the lack of medication, she observed Elam becoming progressively more delusional to the point where she believed he was not currently competent to aid in his defense. Drs. Zimmerschied and Mojdehi obviously would have reaffirmed their prior opinions that continuing medication was important to treat Elam's mental disorders.  But they had not examined Elam recently and therefore could not opine on the critical issue before the court, whether Elam was *presently* competent.[3]  Thus, as the state courts and the district court perceived, these witnesses if called could only have provided

---

[3]At his September 25, 2000 deposition, Dr. Zimmerschied testified that he had no first-hand knowledge of whether Elam was still taking his medication and could not assess whether Elam needed to be institutionalized without examining him.

cumulative opinion testimony on an important but non-dispositive issue: Elam's medical need for continuing antipsychotic medication.

As the state courts concluded, Elam's trial counsel reasonably decided that Dr. Inniss was best positioned to testify about Elam's current mental condition at the competency hearing. As that was the relevant inquiry, the state courts did not unreasonably apply Strickland in concluding that counsel's decision not to call Drs. Zimmerschied and Mojdehi to provide cumulative testimony on the relevance of continuing medication was not constitutionally deficient performance. Even when the initial evaluation by a mental health expert has failed to support a competency or insanity defense, we have repeatedly rejected ineffective assistance claims based upon counsel's failure to obtain and present testimony by additional mental health experts. See King, 266 F.3d at 824; Sidebottom v. Delo, 46 F.3d 744, 753-54 (8th Cir. 1995); O'Neal v. Delo, 44 F.3d 655, 660 (8th Cir. 1995). Thus, it cannot be deficient performance to fail to present cumulative, no-more-favorable expert testimony.

Because we uphold the state courts' resolution of the deficient performance issue, we need not address the district court's alternative prejudice ruling. See generally James v. Iowa, 100 F.3d 586, 589-90 (8th Cir. 1996).

The judgment of the district court is affirmed.

_____