STATE of Missouri, Plaintiff–
Respondent,

v.

Pete PETTY, Defendant–Appellant.

No. 18207.

Missouri Court of Appeals,
Southern District,
Division One.

June 21, 1993.

Motion for Rehearing or Transfer
Denied July 8, 1993.

Elizabeth Bock, Springfield, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Saleeby, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Judge.

Defendant, Pete Petty, was convicted of assault in the second degree, in violation of § 565.060.[1] Based on defendant's pre-trial motion, the trial court ordered the defendant to undergo a mental examination by a court-appointed psychologist to determine his competency to stand trial. After a second examination by a psychologist of the defendant's choosing and an evidentiary hearing on the issue, the trial court found the defendant competent and proceeded with trial. The jury found the defendant guilty of assault in the second degree and assessed a sentence of one year in the county jail. The court entered judgment in accord with the jury's verdict and ordered the defendant to undergo educational counseling. This appeal followed. The only question before this court is whether the trial court erred in finding the defendant competent to stand trial. We affirm the trial court's determination of the defendant's competency.

## FACTS

Defendant was charged with the Class C felony of assault in the second degree for

---

**1.** All statutory references are to RSMo 1986 unless otherwise indicated.

attempting to cause physical injury to his female friend's son by means of a dangerous instrument. Defendant stabbed the 26–year–old victim in the back with a knife. After being charged with the offense, the defendant filed notice of his intent to rely on the defense of nonresponsibility as a result of mental disease or defect. At the same time defense counsel filed a motion for psychiatric examination, questioning the defendant's competency to stand trial. Based on this notice, the trial court ordered a mental examination of the defendant to be completed by Dr. Lester O. Bland, pursuant to § 552.020.2.

Bland found that the defendant suffers from mild retardation. Although retardation is recognized as a valid mental disease or defect,[2] Bland determined that the defendant's mental defect did not render him incapable of understanding the proceedings against him or assisting in his own defense. In his report, Bland stated:

> Within a reasonable degree of psychological certainty, it is the present examiner's opinion that the accused does have the capacity to understand the proceedings against him and to assist in his own defense. Obviously, this gentleman's independent appreciation of all facets of the legal process is lacking. However, with careful instruction, there did not appear to be reason to believe that he could not come to assist his attorney in constructing a reasonable defense. This gentleman would probably best qualify for what is termed the state of "marginal competency." He certainly cannot independently read court documents. He appeared to have no previous background in working with attorneys, or in appreciating some of the abstract terms that may be used in the legal process. However, he did have a basic understanding of the various roles of the judge, witnesses, and defense counsel. When questioned about the role of the prosecutor, he was somewhat vague in his description. Therefore, from this examiner's perspective, if he is given support, he could be considered competent[;] if he

were expected to operate totally independently, without explanations, support, and assistance, then the question of his competency would fall into the "questionable or marginal" category.

After Bland's report was filed with the court, the defendant requested a second psychiatric examination, this one to be completed by Dr. Kenneth Burstin. The trial court released Bland's report to assist Burstin in his evaluation of the defendant. In his report, Burstin wrote that the defendant has a "rudimentary understanding of the charge against him, and probably could be made to understand the roles of those involved in his case, as well as possible penalties for conviction." Burstin indicated in his report that the defendant is capable of independent living and maintaining relationships. In addition he has held a variety of farm labor jobs. However, Burstin's opinion was that the defendant was not competent to stand trial because his retardation, combined with deficient attention-concentration and memory skills, casts doubt on his ability to participate in his own defense.

Although Bland and Burstin differed on whether the defendant was competent to stand trial, both agreed that the defendant was only mildly retarded and did not require hospitalization for treatment pending the court's determination of his mental fitness to proceed. Both psychologists agreed that the defendant, at the time of the criminal conduct, knew and appreciated the nature, quality, and wrongfulness of his conduct. In addition, both psychologists agreed there was no evidence that the defendant's conduct was the function of the mental disease or defect or that he was incapable at the time of the incident to conform his conduct to the requirements of the law.

After both examinations, the trial court held an evidentiary hearing to assess the competency of the defendant to stand trial. Burstin and defense counsel testified during the evidentiary hearing. The trial

---

**2.** According to Bland, mild retardation is defined by the Diagnostic and Statistical Manual of Mental Disorders, Third Edition–Revised, as a mental defect or disease.

court took the issue of the defendant's competency under advisement and, after receiving briefs in support and against a finding of competency, it found the defendant competent to stand trial. The defendant withdrew his plea of not guilty by reason of mental disease or defect, but defense counsel reiterated the challenge to the defendant's competency to stand trial.

## DISCUSSION AND DECISION

The question before the court is whether the trial court erred in finding the defendant competent to proceed with trial. Section 552.020.1, states, "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." In essence, the defendant argues the evidence does not support the trial court's finding him competent to stand trial because (1) a "rudimentary understanding of the [proceedings]," as determined by Burstin, is insufficient to support a determination that he was competent to stand trial and (2) Bland's opinion is premised on defense counsel's making him competent. Despite the defendant's well-reasoned and forceful argument, both written and oral, we conclude the trial court did not err in finding him competent.

■ The law is settled that the trial and conviction of a person who is legally incompetent is a violation of the fundamental right to due process of law. *Miller v. State,* 498 S.W.2d 79, 82[4] (Mo.App.1973). "The principle which will not tolerate conviction of an accused who lacks capacity to consult with counsel and to understand the proceedings rests on values of public conscience—quite apart from considerations of guilt or innocence." *State v. Clark,* 546 S.W.2d 455, 467–68 (Mo.App.1976).

■ While we recognize the due process considerations, the trial judge's determination of competency is one of fact and must stand unless there is no substantial evidence to support it. *Id.* at 469. In testing sufficiency of the trial court's determination of the defendant's competency,

"the reviewing court does not weigh the evidence but accepts as true all evidence and reasonable inferences that tend to support the finding." *State v. Wilkins,* 736 S.W.2d 409, 415 (Mo. banc 1987).

■ The trial judge's finding the defendant competent to proceed to trial was based on the psychological examinations administered by Bland and Burstin, the testimony of Burstin and defense counsel at the competency hearing, and briefs in support and against a finding of competency. It is this court's opinion the evidence is sufficient to support the proposition that the defendant had the capacity to understand the proceedings against him and to assist in his own defense.

The defendant relies on *State ex rel. Sisco v. Buford,* 559 S.W.2d 747 (Mo. banc 1978) in which the trial court set the case for trial after finding that the defendant understood the proceedings against him but could not aid defense counsel in the preparation of his defense. The defendant in *Sisco* could not assist in his own defense because he had a permanent memory loss as to the events of the date of the alleged crime. *Id.* at 747. The trial court found the defendant's lack of memory did not make him incompetent to proceed with trial under § 552.020.1, RSMo 1969, even though he was unable to assist defense counsel. *Sisco,* 559 S.W.2d at 748. In an original proceeding in prohibition, the supreme court accepted the trial court's determination of fact but held that the factual determination that Sisco could not assist in his own defense rendered the defendant incompetent as a matter of law because "[n]o person who ... lacks [the] capacity ... to assist in his own defense shall be tried, convicted or sentenced ... so long as the incapacity endures." *Id.* at 748 (quoting § 552.020.1, RSMo 1969).

The case at bar differs from *Sisco* in that the trial judge in the present case found that the defendant was able to both understand the proceedings against him and assist counsel in his own defense. These facts are consistent with the trial judge's

finding the defendant competent under § 552.020.1.

The trial court received two expert opinions that correlate with finding the defendant competent to stand trial. Bland reported it was his opinion "the accused does have the capacity to understand the proceedings against him and to assist in his own defense." The defendant's expert witness, Burstin, reported that the defendant has a "rudimentary understanding of the charge against him, and probably could be made to understand the roles of those involved in his case, as well as possible penalties for conviction." In addition, during trial Burstin testified there is a possibility the results from the test used [3] in evaluating the defendant could be biased by the defendant's socio-economic and educational background, and that the defendant could possibly have certain abilities higher than those reflected by his score on the test.[4] As examples of those certain abilities, Burstin used the defendant's ability to maintain relationships and hold a job, noting his marriage of 40 years and his having held numerous farm labor jobs.

■ The experts agree the defendant is mildly mentally retarded. However, the fact the defendant had some level of mental defect is not dispositive of his competency to stand trial. *See McDonald v. State*, 572 S.W.2d 633, 635 (Mo.App.1978). According to the court in *McDonald*, suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetence to stand trial. Because the statute specifies "mental disease or defect," we apply *McDonald* by analogy.

Although the experts agreed as to the mental condition of the defendant, they disagreed as to the defendant's competency to stand trial. However, even though Burstin believed him to be incompetent to stand trial, portions of Burstin's testimony support the trial court's determination about the defendant's ability to understand the proceedings against him and to assist defense counsel. In reviewing a case in which the trial court was faced with conflicting evidence regarding the defendant's capacity to stand trial, the court in *State v. Boyd*, 706 S.W.2d 461, 464[3] (Mo.App. 1986), stated that it was within the trial court's province to resolve the conflict.

Regarding defendant's argument that Bland's opinion was premised on counsel's making him competent, we do not read Bland's disclaimers as broadly as does defense counsel. We do not question the inability of the defendant as a *pro se* litigant, and we do not doubt the additional burden that was so well borne by defense counsel in this case. Nevertheless, we read Bland's observations and opinions as supporting his ultimate conclusion that the defendant was competent to understand the proceedings against him and to assist in his own defense.

In addition to receiving the expert opinions from the two psychologists, the trial judge observed the defendant's testimony at trial, during which he was able to describe the roles of the judge, jury, and defense attorney. The defendant's descriptions were simplistic, yet accurate, although the record reflects a dispute over whether the defendant understood the exact role of the prosecuting attorney. At trial out of the hearing of the jury, the defendant was able to recall the events of the incident and his dialogue with the victim during the incident, and he told the court he knew the charge against him was, in his words, for "[c]utting Travis." Asked if he knew the name of the charge, he responded, "Assault."

The trial court's observations of the defendant are consistent with the reports of Bland and Burstin, which recount his reiteration of the facts during an interview with Bland in June 1991 and again to Burstin two months later. Moreover, the defendant has remained firm in his belief that

---

**3.** The defendant was administered the Wechsler Adult Intelligence Scale–Revised (WAIS–R) by both Bland and Burstin.

**4.** During the defendant's interview with Bland, the defendant reported an impoverished educational background. The defendant told Bland that he had not been educated beyond the second grade.

his crime was committed in self defense. Bland reported that the defendant gave a version of the incident "in which his alleged victim had threatened him and that he had used his pocket knife as a defensive weapon." Burstin similarly reported that the defendant "claimed that the victim brandished a knife, and that he stabbed the victim after being threatened."

The defendant may not understand every detail of the criminal process; however, accepting as true all evidence and reasonable inferences tending to support the trial court's finding, the evidence shows the defendant had the capability to assist his attorney in constructing a reasonable defense and to understand the proceedings against him. We affirm.

PARRISH, C.J., and CROW, P.J., concur.