Allen BOLDEN, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 64016.

Missouri Court of Appeals,
Western District.

Sept. 20, 2005.

Rosemary E. Percival, Assistant Public Defender, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before HOWARD, P.J., and SMART and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

Allen Bolden appeals from a judgment denying his Rule 29.15 motion for postconviction relief. Bolden claims that the motion court clearly erred when it found that he was not denied effective assistance of counsel at his trial. We reverse the judgment and remand to the motion court to vacate Bolden's convictions and sentences and afford him a new trial.

## Facts and Procedural History

The facts and circumstances of this case are quite unique. This is the second time we have addressed an appeal regarding the denial of Bolden's motion for postconviction relief. In the first case, *Bolden v. State of Missouri*, 106 S.W.3d 579, 580 (Mo.App. W.D.2003), we summarized the factual and procedural background of this case as follows:

> Bolden was convicted by a jury of assault in the first degree, § 565.050, [RSMo 1994,] and armed criminal action, § 571.015, [RSMo 1994]. He was sentenced to consecutive terms of thirty years for assault and ninety years for armed criminal action, for a total sentence of 120 years. His convictions and sentences were affirmed on direct appeal. *State v. Bolden*, 39 S.W.3d 114 (Mo.App. W.D.1999).
>
> Bolden timely filed his *pro se* Rule 29.15 and, after appointment of counsel, an amended motion was timely filed on August 2, 2000. On March 2, 2001, following an evidentiary hearing, the circuit court granted the motion for postconviction relief and vacated Bolden's convictions and sentences. The circuit court also determined Bolden was mentally incompetent for retrial on the charges and committed him to the Department of Mental Health for evaluation.
>
> Six months later, the Department of Mental Health found Bolden's unfitness to proceed "no longer endures" and declared him to have the capacity to understand the proceedings against him and assist in his own defense. The State filed a Motion for Reconsideration of the circuit court's order of March 2, 2001, which had granted the postconviction relief motion and vacated Bolden's convictions and sentences. Pursuant to Rule 74.06(b), the State argued the prior

order was void and irregular because the circuit court did not issue findings of fact and conclusions of law in granting postconviction relief, as required by Rule 29.15(j).

On March 7, 2002, the circuit court granted the State's Motion for Reconsideration and set aside its order of March 2, 2001, which had sustained the Rule 29.15 Motion. Bolden promptly filed Writs of Prohibition in this court and then the Missouri Supreme Court to challenge the circuit court's reconsideration of the postconviction relief earlier granted. Both writs were denied.

Bolden now appeals the order of March 7, 2002, wherein he contends the circuit court erroneously denied his Rule 29.15 Motion. The State has filed a Motion to Dismiss the Appeal, asserting no final judgment has been entered on the postconviction motion and, thus, this court lacks appellate jurisdiction. (Footnote omitted.) We granted the State's motion and dismissed Bolden's first appeal because although the motion court set aside its previous Rule 29.15 order, it had not entered a final judgment sustaining or overruling Bolden's Rule 29.15 motion. *Id.* at 581.

The motion court then conducted another hearing and issued a new judgment overruling Bolden's motion. We now address the merits of Bolden's appeal from that judgment.

### Standard of Review

◼ We review a denial of a postconviction relief motion to determine whether the motion court's findings of fact and conclusions of law are "clearly erroneous." Rule 29.15(k); *Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000). The motion court's "[f]indings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Moss,* 10 S.W.3d at 511. As the movant, Bolden "has the burden of proving [his] claims for relief by a preponderance of the evidence." Rule 29.15(i).

### Discussion

Bolden claims that the motion court erred in denying his Rule 29.15 motion, because he established that he was denied effective assistance of counsel at his trial, in that he was incompetent at the time of his trial, but his trial counsel failed to ask for an inpatient mental examination, waived the issue of competency on the record, and proceeded to trial despite his being unable to assist in his own defense.[1]

To prevail on his claim of ineffective assistance of counsel, Bolden must show first that "counsel's representation fell below an objective standard of reasonableness," and second that his counsel's deficient performance prejudiced his defense such that, but for the ineffective representation, the result would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "The attorney's conduct must be so egregious that it undermines the proper functioning of the adversarial process to such an extent that the original trial cannot be relied on as producing a just result." *Clayton v. State,* 63 S.W.3d 201, 206 (Mo. banc 2001).

Prior to trial, Bolden's counsel became concerned about Bolden's competency to stand trial. Both counsel and the trial court received letters from Bolden containing random numbers and letters that made

---

1. Bolden raised another issue in his appeal, but our disposition of the case does not re-   quire addressing it.

no sense. One letter appeared to be smeared with feces. At pre-trial appearances, Bolden acted erratically and strangely. During at least one hearing, Bolden urinated in the courtroom. At another appearance, Bolden took a swing at counsel. During his testimony at a motion to suppress hearing, Bolden referred to a conspiracy regarding activist Louis Farrakhan.

Bolden's trial counsel also had concerns about Bolden's ability to follow her advice or assist in his defense. Counsel had received a twenty-year plea offer from the State, but she was not able to effectively communicate it to Bolden and did not believe he understood the offer. Bolden refused to allow counsel to speak with his family and would not respond to her questions and comments. Instead, Bolden would suggest ways for counsel to kill herself.

Counsel requested and received a mental examination for Bolden that was conducted by Dr. Birmingham. Dr. Birmingham found Bolden competent but warned counsel to watch for any deterioration of his condition over time. Counsel then requested a second examination by Dr. Vandenberg. Bolden refused to speak with Dr. Vandenberg. However, after reviewing Bolden's records, Dr. Vandenberg concluded that Bolden needed to be observed as an inpatient to further explore and evaluate Bolden's seriously disordered thinking. Subsequently, Dr. Birmingham again saw Bolden and also suggested the need for an inpatient evaluation.

On September 8, 1997, Bolden appeared in court, expressed his frustration with efforts to have him evaluated further, and announced that he was competent and ready for trial. The trial court asked Bolden's trial counsel how she wanted to proceed regarding the mental issues. Counsel told the court that the psychologists

were concerned about Bolden's mental condition and had suggested an inpatient evaluation, but Bolden would not cooperate with them and was opposed to further evaluation. When Bolden insisted to the court that he was competent, counsel replied, "I guess by this Mr. Bolden is waiving any mental issues.... [I]f he's going to waive his mental defense, then we just as well go ahead and proceed to trial." Counsel then let the case go to trial without requesting any further evaluations of Bolden.

At the postconviction hearings, counsel said she was not planning on waiving the mental issues, but she instead was planning on asking for an inpatient evaluation. However, counsel was surprised when Bolden told the trial court he wanted to waive the mental issues, so "at that time, [she] just waived."

The case proceeded to a jury trial on October 7, 1997, and Bolden's bizarre behavior continued. Bolden made both sexual and threatening statements to witnesses in the presence of the jury. Counsel sat Bolden with his back to the jury to minimize the jury's ability to observe his conduct.

At sentencing, Bolden made a number of bizarre statements, including that America would be destroyed in 1999. During the pre-sentence investigation, Bolden told the investigator that his treatment plan should be to send him to Saudi Arabia to be educated and become King and that he was a friend of King Fayed. Bolden also told the investigator that "he did away with his emotions and feelings through astro-rejection, metaphysics, telepathic powers, telekinetics, and psychokinesis" and that he "was both psychic and clairvoyant."

After his convictions were affirmed on direct appeal, Bolden filed his Rule 29.15

motion claiming that his trial counsel was ineffective for failing to ask the court for further mental evaluation and instead agreeing to proceed to trial. Bolden argued that his counsel had a duty to ensure he was capable of making a knowing, voluntary, and intelligent decision to forego the State's plea offer and proceed to a jury trial.

At the motion hearing, counsel recounted Bolden's bizarre behavior and her concern before trial about his mental fitness. Counsel did not feel that Bolden understood her attempts to explain the plea offer, nor did she believe Bolden was capable of assisting in his own defense. Despite the two psychologists' recommendations for an inpatient evaluation, counsel said she waived the competency issue not out of trial strategy but because Bolden wanted her to. Dr. Vandenberg testified at the motion hearing that Bolden was not competent at the time of his trial due to mental disease and defect, specifically paranoid schizophrenia.

Of course, the motion court was not required to believe any of the testimony regarding Bolden's incompetence, but the record indicates that the motion court did believe it. At the conclusion of the hearing, the motion court (which also conducted the trial) said: "I'm a lot of things but fair being the most one. Mr. Bolden had no idea what was going on. He wouldn't cooperate. No doubt in my military mind he was schizoid. And I was here when he did those things so nobody is lying about it."

On March 2, 2001, the motion court sustained Bolden's Rule 29.15 motion and vacated Bolden's convictions and sentences. The motion court found that Bolden was suffering from paranoid schizophrenia, and, following Dr. Vandenberg's recommendation, it ordered Bolden committed to the Department of Mental Health pursuant to section 552.020 RSMo, 2000, because he lacked the capacity to understand the proceedings against him and to assist in his own defense. The motion court's order notes that the attorneys for the State and Bolden agreed to all aspects of the order.

On October 19, 2001, the State filed a "Motion for Reconsideration," asking the court to reconsider its March 2, 2001, order because it did not comply with Rule 29.15's requirement for findings of fact and conclusions of law. The State, in a subsequent motion, also argued that the motion court could reconsider its Rule 29.15 ruling under Rule 74.06(b)(3), which allows a court to relieve a party from a final judgment or order when it is irregular.

On March 7, 2002, citing Rule 74.06, the motion court granted the State's motion. The court set aside its March 2, 2001, order and reinstated Mr. Bolden's convictions and sentences.

After this court dismissed Bolden's appeal from the March 7, 2002, order for lack of a final judgment, the motion court conducted another hearing on Bolden's Rule 29.15 motion with essentially the same evidence being introduced. Dr. Vandenberg also explained that a person who is psychotic might have moments of lucidity, appearing to be coherent, but still be incompetent to stand trial.

The motion court issued a new judgment, this time overruling Bolden's Rule 29.15 motion. The judgment pointed to the fact that one doctor had found Bolden competent and Bolden refused to cooperate with the other. The judgment also noted that Bolden cogently waived the competency issue in open court and that counsel had done everything she could do given the circumstances. This brings us full circle back to the summary we began with above.

"No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." § 552.020 RSMo, 2000. "Due process requires that a defendant may not be tried unless he is competent to stand trial." *State v. Tokar*, 918 S.W.2d 753, 762 (Mo. banc), *cert. denied*, 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996) (citing *Medina v. California*, 505 U.S. 437, 112 S.Ct. 2572, 2574, 120 L.Ed.2d 353 (1992)). " 'The principle which will not tolerate conviction of an accused who lacks capacity to consult with counsel and to understand the proceedings rests on values of public conscience—quite apart from considerations of guilt or innocence.' " *State v. Petty*, 856 S.W.2d 351, 353 (Mo.App. S.D.1993) (quoting *State v. Clark*, 546 S.W.2d 455, 467–68 (Mo.App.1976)).

Counsel had serious concerns about Bolden's competency. She had observed his bizarre behavior and was unable to get him to understand the State's plea offer. She secured two psychologists to evaluate her client. One psychologist found Bolden competent but warned counsel that Bolden would need observation due to possible deterioration in his condition. Bolden refused to cooperate with the second psychologist, but he was able to make a recommendation based upon a review of Bolden's records. Both psychologists ultimately recommended inpatient evaluation of Bolden to determine his competency to stand trial because his capacity was so questionable. In spite of this, counsel waived the competency issue and proceeded to trial even though, as she admitted at the evidentiary hearing, Bolden was unable to assist in his own defense.

When Bolden, *pro se*, wanted to waive the competency issue, the trial court even invited counsel to tell the court what she wanted to do. Counsel replied, "I guess by this Mr. Bolden is waiving any mental issues," and she proceeded to trial without requesting an inpatient mental evaluation as recommended by the psychologists.

Counsel's concerns were validated during Bolden's trial. At the first evidentiary hearing, the trial court even commented on Bolden's behavior at trial and said, "[n]o doubt in my military mind he was schizoid." Additionally, the State and Bolden's postconviction counsel agreed to the first Rule 29.15 order, which found Bolden incompetent.

We find that Bolden's trial counsel's performance constituted ineffective assistance of counsel and that Bolden established prejudice because there is a reasonable probability that the result would have been different if an inpatient evaluation had been requested. The motion court, after the first evidentiary hearing, even commented that had Bolden received further mental evaluation "he probably would have had a 552 NGRI out of the deal." [2]

We are left with the definite and firm impression that a mistake has been made. The judgment denying postconviction relief is reversed, and the case is remanded with directions to vacate Bolden's convictions and sentences and place the case on the trial docket.

SMART and NEWTON, JJ., concur.

---

**2.** *See* § 552.030.1, which states, "A person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect such person was incapable of knowing and appreciating the nature, quality, or wrongfulness of such person's conduct."