

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| RICHARD V. COOPER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD82926 |
| | ) | |
| STATE OF MISSOURI, | ) | Opinion filed:  February 16, 2021 |
| | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE S. MARGENE BURNETT, JUDGE**

Division Two:  W. Douglas Thomson, Presiding Judge,
Lisa White Hardwick, Judge and Edward R. Ardini, Jr., Judge

Richard V. Cooper appeals from the Circuit Court of Jackson County's denial of his Rule 24.035 motion after an evidentiary hearing.  In his first two points on appeal, Cooper contends that the motion court clearly erred in denying his claim for ineffective assistance of counsel.  In his third point, Cooper argues that the motion court clearly erred in disallowing his second amended motion by miscalculating the filing deadline, or alternatively, failing to apply the abandonment doctrine.  We affirm.

## Factual and Procedural History

In 2007, the State charged Richard Cooper ("Cooper") with the class A felony of murder in the first degree, three counts of the class A felony of assault in the first degree, four counts of the class A felony of assault of a law enforcement officer in the first degree, and eight counts of the unclassified felony of armed criminal action.

During Cooper's two years in custody awaiting trial, Cooper's retained counsel noticed a serious deterioration in Cooper's mental fitness. In May 2010, counsel, citing an attempted suicide and other concerning behavior, requested a mental examination of Cooper, which the trial court granted. The examination reported a diagnosis of "Psychotic Disorder, Not Otherwise Specified" and opined that although Cooper was at that time incompetent to proceed, "there [was] a substantial probability that the defendant [would] be mentally fit to proceed in the reasonably foreseeable future following an appropriate course of psychiatric treatment." The trial court found Cooper incompetent to proceed and ordered him to be committed to the department of mental health. On April 5, 2011, a second report evaluating Cooper's competence was issued. Its findings were similar to the first report, but the primary diagnosis included "Schizophrenia, Undifferentiated Type" and noted the need to rule out malingering. It also recommended that Cooper be found incompetent to proceed and remain at Fulton State Hospital for further treatment. This second evaluation also noted that "[i]f found unfit to proceed, there is a substantial probability that he will attain the mental fitness to proceed to trial in the reasonably foreseeable future."

On October 17, 2011, a third evaluation addressing Cooper's competence was issued. The report diagnosed Cooper with "Brief Psychotic Disorder, in Full Remission" and opined that Cooper was malingering. It reported that Cooper did not "currently suffer from a mental disease or defect" and that he had "the capacity to understand the proceedings against him and . . . to assist his attorney in his own defense." The report recommended that Cooper "be allowed to proceed to trial for the disposition of the charges pending against him." On November 7, 2011, a motion to proceed was filed and the court accepted the report and without a hearing found Cooper competent to proceed.

On April 12, 2013,[1] pursuant to plea negotiations, the State filed an amended information that reduced the charge of murder in the first degree to murder in the second degree and dismissed three counts of assault in the first degree and three counts of armed criminal action.[2] At the guilty plea hearing, Cooper testified that he had previously been found incompetent to proceed. He testified, however, that he was now competent, that he understood the proceedings, and that he was there "[t]o take a plea." He testified that he was going to ask that all of his sentences run concurrently. Cooper testified that he understood that for each charge of assault of a law enforcement officer he could be sentenced to "[t]en to 30 to life." He stated that he understood that the minimum sentence for armed criminal action was three years

---

[1] The two-year gap between notable events is due to several continuances filed by defense counsel.

[2] The agreement, thus, contemplated that Cooper would plead guilty to murder in the second degree, four counts of assault of a law enforcement officer in the first degree, and five counts of armed criminal action.

3

and that the maximum was "[l]ife, 99." He stated that he understood that the charge of murder in the first degree would be reduced to murder in the second degree and that, instead of life without parole, he would be facing "ten years to 30 years or life."

Cooper testified that plea counsel had not promised him "how much time [he would] actually serve." He also agreed that he had concerns that the judge was "going to unload on [him]," that the judge "could" unload on him, and that the judge could give him a sentence "all the way down to ten." He stated that he understood that if anyone had told him what they thought the court was going to do, that person was "flat out lying." The court accepted Cooper's guilty pleas and found him guilty of the offenses to which he pled guilty. After the plea, a sentencing assessment report was completed during which Cooper was interviewed.

On July 1, 2013, the parties appeared for sentencing. Plea counsel informed the court that Cooper wanted plea counsel to withdraw and wanted to withdraw his guilty pleas. The court deferred sentencing until those issues could be raised by motion and fully considered. On July 26, 2013, Cooper filed a motion to withdraw his guilty plea alleging that his plea was not voluntary because "he was under duress and did so without understanding the charges and the consequences of the guilty plea." That same day, the parties again appeared for a hearing. Plea counsel stated that Cooper had decided to continue to retain him and requested a hearing to address his motion to withdraw the guilty plea.

On August 9, 2013, the court held a hearing on Cooper's motion to withdraw his guilty plea. There, the trial court found that Cooper had been advised of his

4

rights; that he understood those rights; that he voluntarily, freely, and intelligently waived his rights; that he was competent and was able to understand and assist his attorney; and that his decision to plead guilty was made freely, voluntarily, and intelligently.[3] The court denied the motion and set the case for sentencing.

On August 23, 2013, the parties appeared for Cooper's sentencing hearing. The court sentenced Cooper to life imprisonment for murder in the second degree and for each count of assault of a law enforcement officer in the first degree. The court sentenced him to ten years imprisonment for each count of armed criminal action. The court ordered the sentences to run concurrently. Upon leaving the courtroom, plea counsel stated to Cooper's family that he believed Cooper still had unresolved mental issues.

On October 21, 2013, Cooper timely filed his *pro se* Rule 24.035 motion. On August 15, 2014, Cooper's retained post-conviction counsel McMillin entered his appearance for Cooper, who then timely filed the amended Rule 24.035 motion. Nearly three years later, on May 3, 2017, Cooper's retained counsel moved to withdraw, which the court permitted.[4] On February 25, 2018, Cooper's newly-retained counsel requested leave to strike the amended 24.035 motion and file a second amended motion. The motion court initially entered its order granting Cooper's request to file a second amended motion. The motion court later vacated

---

[3] The trial court noted that "[h]aving buyer's remorse is not enough to get a guilty plea set aside."

[4] Shortly after McMillin's withdrawal, he was disbarred, *In re McMillin*, 521 S.W.3d 604 (Mo. banc 2017). Cooper retained new post-conviction counsel, Hastings, who represented Cooper for the remainder of the post-conviction proceedings.

5

this order, noting that because the deadline for filing a 24.035 motion is mandatory and cannot be extended by the trial court, it had no authority to grant Cooper's motion to file a second amended motion.[5]

On October 12, 2018, the motion court held a post-conviction relief hearing. Both plea counsel and Cooper testified. On March 1, 2019, the motion court denied Cooper's Rule 24.035 motion. In doing so, the motion court addressed only Cooper's amended motion filed on August 21, 2014, and did not consider his second amended motion. The motion court found and concluded that Cooper's claims were "clearly refuted by the plea transcript and consist of conclusions rather than facts." On March 29, 2019, Cooper filed a motion to amend the judgment, which the motion court denied on June 5, 2019. Cooper appeals. Further factual details will be outlined as relevant in the analysis below.

**Standard of Review**

Our review of the denial of a Rule 24.035 motion "is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k). "The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Hendrix v. State*, 473 S.W.3d 144, 148 (Mo. App. W.D. 2015) (citing *Dunlap v. State*, 452 S.W.3d 257, 262 (Mo. App. W.D.

---

[5] The motion court also noted that less than a month after its ruling allowing Cooper to file a second amended motion, the Southern District Court of Appeals emphasized that the court "is constitutionally bound to follow *Gittemeier* as the latest controlling decision on the issue from the Supreme Court of Missouri." *See Steele v. State*, 555 S.W.3d 486, 489 (Mo. App. S.D. 2018); *see generally Gittemeier v. State*, 527 S.W.3d 64 (Mo. banc 2017). As a result, the motion court set aside its order of September 19, 2018, which had granted Cooper's motion to file a second amended motion.

6

2015)). We presume the motion court's findings and conclusions are correct. *Nguyen v. State*, 184 S.W.3d 149, 151-52 (Mo. App. W.D. 2006) (citing *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991)). "The movant has the burden of proving movant's claims for relief by a preponderance of the evidence." Rule 24.035(i). "The motion court is not required to believe the testimony of the movant or any other witness, even if uncontradicted, and this Court defers to the motion court's determination of credibility." *Smith v. State*, 413 S.W.3d 709, 715 (Mo. App. E.D. 2013).

## Analysis

### *Point One.*

In his first point on appeal, Cooper claims that the motion court erred in denying his Rule 24.035 motion for post-conviction relief, specifically claim 12(j), which stated *in its entirety*, that Cooper's counsel was ineffective because he "stated to Defendant's family that Defendant still had unresolved mental issues, yet defendant's attorney did not act on it." His point on appeal initially claims that he received ineffective assistance of counsel because trial counsel failed to act on Cooper's incompetency (the "Initial Claim"), but goes further, claiming that trial counsel "failed to request a competency hearing prior to Mr. Cooper's plea and sentencing, failed to challenge the third medical opinion, failed to inform Mr. Cooper that he had a right to challenge it, and failed to keep Mr. Cooper is [sic] a suitable hospital despite the trial attorney's knowledge that Mr. Cooper's mental state was a "wreck.""

7

Preliminarily, we note that "any allegations or issues that are not raised in the [post-conviction] motion are waived on appeal." *McLaughlin v. State*, 378 S.W.3d 328, 340 (Mo. banc 2012) (quoting *Johnson v. State*, 333 S.W.3d 459, 471 (Mo. banc 2011)). Further, "[p]leading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal." *Id.* In Cooper's post-conviction relief motion, he alleged ineffectiveness only in that his plea counsel believed Cooper had unresolved mental issues but did not act on them. This is very similar to his Initial Claim, above. His post-conviction relief motion made no ineffectiveness claim for failing to: request a competency hearing prior to plea and sentencing; challenge the third medical opinion; inform Cooper of his right to challenge the medical opinion; or keep Cooper in a suitable hospital. Accordingly, his claims regarding these failures are not preserved for appeal and will not be addressed. *Id.* We address the Initial Claim, that trial counsel failed to act on Cooper's incompetency.

As to Cooper's claim, the motion court found that:

Movant's eighteenth claim is that plea counsel believed Movant had unresolved mental health issues and did not act on it. Plea counsel discussed his concerns with Movant's mental state during his trial testimony extensively. The competency to stand trial and mental health concerns are two entirely separate issues and plea counsel addressed his concerns for both. As indicated in *Edwards v. State*, 200 S.W.3d 500, 519 (Mo. banc 2006), the test for mental competency concerns whether a defendant has the present ability to consult with his or her attorney with a "reasonable degree of rational understanding" and has a rational and factual understanding of the proceedings. *Id.* As indicated in the plea transcript, Movant told the court that he was competent to proceed, he was able to recite the terms of the agreement, and he was also able to describe the mandatory percentage of time he would serve before he was eligible for parole. Simply stating the Movant had unresolved

8

mental health issues is not enough to invalidate a guilty plea. Movant was declared competent to stand trial under the procedure outlined under Missouri R.S.Mo. § 552.020, Movant was able to recite the terms of the plea agreement, the Court found that Movant was "competent to proceed," that he answered the questions during his guilty plea "clearly and intelligently," he had "good discourse with his attorney," and that there was "no reason to believe that the finding of competency is any way not in effect and not appropriate this time." Therefore this claim must fail.

For reasons discussed, *infra*, we cannot say that these findings are clearly erroneous.

"Due process requires that a person who wishes to plead guilty must be competent to do so and must enter the plea knowingly and voluntarily." *State v. Shafer*, 969 S.W.2d 719, 731 (Mo. banc 1998). The law requires this because "a guilty plea is a waiver of several constitutional rights," *Shafer*, 969 S.W.2d at 731, and "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his rights . . . ." *Hubbard v. State*, 31 S.W.3d 25, 34 (Mo. App. W.D. 2000) (quoting *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990)).

However, "[t]he suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial [or plead guilty]." *Henderson v. State*, 977 S.W.2d 508, 511 (Mo. App. S.D. 1998). "The test for competency is 'whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as a factual understanding of the proceedings against him." *Woods v. State*, 994 S.W.2d 32, 36 (Mo. App. W.D. 1999) (quoting *State v. Vansandts*, 540 S.W.2d 192, 202 (Mo. App. E.D. 1976)). "A defendant is presumed competent and bears the burden of showing a lack of competence." *Washington v.*

9

*State*, 598 S.W.3d 656, 667 (Mo. App. E.D. 2020) (citing *State v. McCurry-Bey*, 298 S.W.3d 898, 901 (Mo. App. E.D. 2009)).

To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must satisfy the two-prong test provided by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), requiring proof by a preponderance of the evidence that: (1) his or her counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) he or she was prejudiced as a result. *Sams v. State*, 980 S.W.2d 294, 296 (Mo. banc 1999). Under the performance prong, it is presumed that "the challenged action was sound trial strategy" and that counsel "rendered adequate assistance" and "made all significant decisions in the exercise of reasonable professional judgment." *State v. Nunley*, 980 S.W.2d 290, 292 (Mo. banc 1998).

> To satisfy the first *Strickland* [performance] prong when a movant claims counsel should not have allowed the movant to enter a guilty plea without investigating the movant's mental condition, the movant must show "a factual basis indicating a questionable mental condition that should have caused [the] attorney to initiate an independent investigation of [the movant's] mental state." To satisfy the second *Strickland* [prejudice] prong when a movant claims counsel should not have allowed the movant to enter a guilty plea without investigating the movant's mental condition, the movant must show a reasonable probability she was not competent at the time in question.

*Washington v. State*, 598 S.W.3d at 667-68 (internal citations omitted).[6]

---

[6] In *Hubbard* and *Williams*, this Court used a modified *Strickland* analysis in considering whether counsel was deemed ineffective where he or she failed to investigate the defendant's mental health status. *Hubbard*, 31 S.W.3d at 34; *Williams*, 111 S.W.3d at 560. In *Washington*, our Eastern District colleagues streamlined *Hubbard*'s analysis. This approach encompasses all considerations taken into account in *Hubbard* and *Williams*. We analyze counsel's actions under *Washington*'s modified *Strickland* standard.

"A movant must satisfy both prongs of the *Strickland* standard to obtain postconviction relief as a result of ineffective assistance of counsel." *Hounihan v. State*, 592 S.W.3d 343, 348 n.3 (Mo. 2019) (citing *Anderson v. State*, 564 S.W.3d 592, 600 (Mo. 2018)). Because a claim of ineffective assistance of counsel must be rejected if the movant fails to satisfy *either* the performance or prejudice prong, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

*Questionable Mental Condition*

To meet the first *Strickland* prong, the performance prong, Cooper must show a factual basis indicating a questionable mental condition that should have caused plea counsel to consider Cooper's mental condition and ability to proceed before allowing Cooper to enter a guilty plea. *Washington*, 598 S.W.3d at 668 (citing *Williams v. State*, 111 S.W.3d 556, 560 (Mo. App. W.D. 2003)). "An investigation is unnecessary when an accused has the ability to rationally consult with his attorney and understand the court proceedings." *Williams v. State*, 111 S.W.3d at 560 (citing *Clayton v. State*, 63 S.W.3d 201, 209 (Mo. banc 2001)). Appellate review of the reasonableness of trial counsel's conduct is viewed from counsel's perspective at the time and not from hindsight. *Baird v. State*, 906 S.W.2d 746, 749 (Mo. App. W.D. 1995).

In this case, plea counsel testified during post-conviction proceedings that he was and still is worried about Cooper's mental well-being, but because Cooper was

11

able to assist with his defense and understood the proceedings, "[he] had no reason to say [Cooper] wasn't legally competent." Plea counsel's relevant testimony follows:

Q: Sure. And to be clear, you discussed a multitude of defenses. You not only talked about mental health with your client, …, you also discussed duress and other areas –

A: We discussed coercion. Specifically, if [he] was forced to do this by the guys that were with him. We talked about that for a little bit so.

* * * * * * * *

Q: With regard to the actual plea hearing, he was – your client was able to communicate with you, Judge Schieber, and the attorney for the state of Missouri. Is that correct?

A: Yeah. I mean, I don't remember him going into an odd mental shutdown state or anything. And the record – the record was, …, pretty abbreviated. My questions are fairly lengthy, leading questions. And then he gives responses that … are abbreviated.

Q: Sure. And going back to what you were saying earlier. You went over all of this with him, correct?

A: Oh, yeah. Yes.

Q: You went over the evidence with him?

A: He knew the evidence backwards and forwards.

* * * * * * * *

Q: But, again, … – you believed he was legally competent to proceed?

A: When we engaged in the record, based on my discussions that day, appropriate answers were given that I believed were sufficient to demonstrate that he was legally competent, consistent with what we'd been told by a doctor that released him for the wrong, I think, reason. In other words, was he talking to me and could he assist me that day? Yeah. Given the person – who he was, which may have been a generally incompetent person.

Q: And, again, not just that day, but the months leading up to that, in the conversations you had with him prior to that day?

12

A: The one day that was really bad was the day that prompted me to file the initial request for competency [in 2010].[7] I never saw that level of – because there was – in addition to the dissociation, I call it, lack of memory – I mean, he was dissociate of that day [sic].

Q: Sure.

A: I did not see the dissociativeness. I definitely saw the lack of emotion. He wasn't as quick. The clarity of mind was gone.

Plea counsel testified that following Cooper being found competent, Cooper demonstrated an ability to consult with plea counsel and understand the proceedings. Plea counsel testified that Cooper knew the evidence "backwards and forwards," indicating Cooper's knowledge of the case. Cooper was able to act on that knowledge by reviewing evidence and discussing the case with plea counsel, including the possibility of claiming specific defenses.

Importantly, in 2010 following Cooper's attempted suicide, plea counsel *himself* requested a mental examination of Cooper. As a result of this initial mental examination, Cooper was found to be incompetent and received treatment in a mental health facility for approximately one year. Notably, this first mental examination report opined that "there [was] a substantial probability that the defendant will be mentally fit to proceed in the reasonably foreseeable future …." Six months later, a second examination resulted in the same diagnosis, including that "there is a substantial probability that he will attain the mental fitness to proceed to trial in the reasonably foreseeable future." Finally, a year after the original examination resulting in a finding of incompetency, a third examination reported in 2011 a

---

[7] The 24.035 hearing occurred in October, 2018.

13

primary diagnosis that Cooper was malingering and in full remission from a brief psychotic disorder. It opined that Cooper "had the capacity to understand the proceedings against him and . . . to assist his attorney in his own defense," and recommended that Cooper "be allowed to proceed to trial for the disposition of the charges pending against him." Based on the third report, the trial court found Cooper competent to proceed under Section 552.010.[8]

Plea counsel testified that after Cooper was found competent, he still had concerns about Cooper's *general* mental condition and took steps toward obtaining an additional, independent evaluation of Cooper. However, Cooper refused to participate in further examinations, which led plea counsel to abandon the independent mental examination approach. Importantly, however, it was plea counsel's belief that Cooper was legally competent, differing from concerns regarding Cooper's *general* mental condition. Plea counsel correctly acknowledged that a difference exists between general mental competence and legal competence. *See Henderson v. State*, 977 S.W.2d 508, 511 (Mo. App. S.D. 1998) ("[t]he suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial [or plead guilty]"). Based on the record and plea counsel's testimony, Cooper established his legal competence by

---

[8] All statutory citations are to R.S.Mo. 2018, unless otherwise indicated. Section 552.010 states: "The terms 'mental disease or defect' include congenital and traumatic mental conditions as well as disease. They do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, whether or not such abnormality may be included under mental illness, mental disease or defect in some classifications of mental abnormality or disorder. The terms 'mental disease or defect' do not include alcoholism without psychosis or drug abuse without psychosis or an abnormality manifested only by criminal sexual psychopathy as defend in Section 202.700 . . . .

14

demonstrating his understanding of the charges against him, knowledge of the plea agreement, and ability to assist his attorney in his defense.

Cooper argues that his responses at the plea hearing should have made plea counsel question his competency. However, Cooper's responses did not demonstrate confusion but instead indicated he was knowledgeable concerning the charges against him and the range of punishment for the charged crimes.

Finally, the cases in which Cooper relies are easily distinguishable from the facts presented here. In *Hemme*, 680 S.W.2d 734, 735 (Mo. App. W.D. 1984), defendant had an eight-year history of treatment for mental health problems, yet no mental evaluation was *ever* performed or requested. At the plea hearing, defendant testified that she felt she was a spectator of her own crime, "watching from the outside." *Id*. Because the trial court was unsatisfied with defendant's answers, the guilty plea was denied. *Id*. After a short recess, the parties returned to the courtroom for a second attempt where the court ultimately accepted the guilty plea. *Id*. at 736. At the post-conviction hearing, defendant testified that during the court's recess, defense counsel and the prosecutor jointly instructed her as to how she should respond to the court's questions. *Id*. Importantly, defense counsel testified that he doubted defendant's competence at the time she committed the crime, as well as at the plea hearing, yet failed to investigate or inform the court of such. *Id*. The court held that counsel was ineffective for failing to request a mental examination or otherwise take action after having doubted defendant's competency. *Id*. at 737.

15

In *Bolden v. State*, 171 S.W.3d 785, 787-88 (Mo. App. W.D. 2005), defendant had sent the trial court and counsel incomprehensible notes made up of random letters and numbers – one in which was covered in what appeared to be smeared feces. Notably, during several proceedings, defendant acted extremely erratic and strange: defendant urinated in the courtroom at least once; defendant took a swing at counsel; and defendant ranted about conspiracies, including that America would be destroyed. *Id.* At the post-conviction hearing, trial counsel testified that he did not believe defendant was able to assist in his own defense. *Id.* The court found that counsel was ineffective for failing to request a mental examination or otherwise take action. *Id.* at 790.

Here, Cooper had three separate mental evaluations, the first requested by plea counsel and the subsequent evaluations deriving from the first. The third evaluation reported that Cooper was competent to proceed. Cooper thereafter presented no indication of incompetence. A review of the record demonstrates Cooper did not act erratic or strange. Although plea counsel acknowledged worries regarding Cooper's general mental state, he repeatedly testified that he believed Cooper was legally competent because he understood the proceedings and was able to assist plea counsel in his defense. Though Cooper had a previous finding of incompetency, he was evaluated, treated, re-evaluated, treated further, re-evaluated yet again, and *then and only then* declared competent, when he presented *no further* indication that he could not assist in his defense or understand the proceedings. Because Cooper was able to both rationally and factually assist in his defense and understand the

16

proceedings, no factual basis existed for plea counsel to consider Cooper's mental condition and ability to plead guilty.

Accordingly, Cooper did not prove a factual basis indicating a questionable mental condition that should have caused plea counsel to consider Cooper's mental condition and ability to proceed before allowing Cooper to enter a guilty plea.

Because we find that Cooper did not prove the performance prong of *Washington's* modified-*Strickland* test for ineffective assistance of counsel on this point, we exercise our discretion not to analyze the prejudice prong of his claim. The motion court did not clearly err in denying Cooper's claim that plea counsel provided ineffective assistance in failing to address the issue of Cooper's competence. Point I is denied.

### *Point Two.*

In his second point, Cooper contends that the motion court erred in denying his motion for post-conviction relief after an evidentiary hearing because plea counsel was ineffective for misadvising him of the possible duration of the sentences. Specifically, Cooper asserts plea counsel incorrectly advised him that if he accepted the plea, he would not be sentenced to over fifteen years on any charge. Cooper argues that, as a result, Plea counsel's incorrect statements of law rendered his guilty plea unknowing and involuntary. We disagree.

As to Cooper's claim, the motion court found:

Movant's sixth claim is that he did not knowingly and voluntarily plead guilty because plea counsel indicated that he would "not be sentenced to over fifteen (15) years." This claim is refuted by the plea transcript. Plea counsel specifically indicated on the record that "I've told you, we

17

have no idea, the Judge can give you life, the Judge can give you all the way down to ten." The record clearly shows that Movant was made aware that he could get "life" in prison and that he would have to serve "85%" of his sentence. Therefore, this claim fails.

To prevail on a claim of ineffective assistance of counsel following a guilty plea, Cooper must show by a preponderance of the evidence that: (1) plea counsel's performance was deficient because he failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the deficient performance prejudiced Cooper. *Pittman v. State*, 331 S.W.3d 361, 364 (Mo. App. W.D. 2011) (citing *Strickland,* 466 U.S. at 687)).

Once a guilty plea is entered, all claims that counsel was ineffective are waived, "except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made." *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005). To satisfy the prejudice prong, Cooper "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). If either the performance prong or the prejudice prong is not met, then we need not consider the other, and Cooper's claim of ineffective assistance of counsel must fail. *Strickland,* 466 U.S. at 687.

"[A] guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Neal v. State*, 379 S.W.3d 209, 215 (Mo. App. W.D. 2012) (quoting *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997)). "A defendant's guilty plea is not voluntary 'if the defendant is misled, or is induced to

18

plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded." *Steger v. State*, 467 S.W.3d 887, 891 (Mo. App. E.D. 2015) (quoting *Roberts v. State*, 276 S.W.3d 833, 836 (Mo. banc 2009)). "When considering whether a defendant pleaded guilty based on mistaken belief about the sentence and plea agreement, the test is whether a reasonable basis exists in record for such belief." *Steger*, 467 S.W.3d at 891 (citing *Brown v. Gammon*, 947 S.W.2d 437, 440-41 (Mo. App. W.D. 1997)). "A reasonable mistake exists only if defendant's belief was based upon positive representations upon which he was entitled to rely." *Id*.

Cooper's claim rests on the premise that Plea counsel advised him that if he accepted the guilty plea, he could not be sentenced in excess of the sentencing assessment report's recommendation, or fifteen years. After reviewing the record, we find no reasonable basis exists for Cooper's contention.

The pertinent exchange between Plea counsel and Cooper, which the motion court cited in its findings, follows:

> Q: So the important thing is we do our best job to get as fair or low a sentence as we can at the time of sentencing. That puts you in the best position. You understand that, right?
> A: Yes.
> Q: And again, I've told you, we have no idea, the Judge can give you life, the Judge can give you all the way down to ten, correct?
> A: Yes.

The plea court provided further clarification:

> Q: Now, just like [plea counsel] told you, I don't know what I'm going to do on these cases; do you understand that?
> A: Yes.

19

Q: I won't know until I get the Sentencing Assessment Report, I evaluate that, and I read that, digest that, and I hear the arguments of [the prosecutor], I hear the arguments of [plea counsel], and whatever evidence you all think you might put on at sentencing. When I hear that, I will digest that, and then and only then will I make a determination as to what I think is appropriate; do you understand that?

A: Yes.

Q: So right now I have no idea what I'm going to do as far as sentencing goes; do you understand that?

A: Yes.

* * * * * * * * *

Q: So if anybody has told you what they think I'm going to do they are just flat out lying to you. I don't know if anybody has, but if they have then they shouldn't have been because I don't know what I'm going to do until we have that sentencing hearing; do you understand that?

A: Yes.

Q: And knowing that you still want to go ahead and go through with this; is that correct?

A: Yes.

In addition, Cooper was able to recite at the plea hearing the range of punishment for the crimes charged. Cooper acknowledged that the class A felony assault in the first degree carried a sentence of "[t]en to 30 or life" and the sentence applied to the class A felony assault on law enforcement officers. Cooper correctly stated that the offense of armed criminal action carried a punishment of "[t]hree years" to "[l]ife, 99." Cooper also testified correctly when asked the percentage he must serve on a charge of armed criminal action, stating "[e]ighty-five percent."

Plea counsel testified at the post-conviction hearing that the most he would have told Cooper was that "there's a good chance that he could get a sentence of less than 15 years." Plea counsel stated that he was *hopeful* that Cooper would "maybe

20

[get] probation or a very minimal sentence" because "he was just the wheel man on one day" and he had "an amazing SAR or PSI." Plea counsel testified he told Cooper that although he was "hoping that we could get less than 15 on a murder two," that "there was concern," primarily due to the several counts of assault of a law enforcement officer.

The record demonstrates that Cooper was fully advised of the potential consequences of pleading guilty, including the reality that he was facing life imprisonment on multiple charges. Plea counsel and the plea court took steps to ensure that Cooper was aware of the wide range of discretion the court had in determining his sentence. At no point during either plea counsel or the plea court's clarification did Cooper indicate any degree of misunderstanding or hesitance. In fact, Cooper specifically agreed that no one had promised him "how much time [he would] actually serve." Cooper testified that he understood, and agreed that he wanted the court to accept his plea and move forward with sentencing.

Cooper argues that the record demonstrates that plea counsel was confused as to the parameters of the plea deal. Cooper contends that plea counsel's confusion regarding the details of the plea deal demonstrate why Cooper would be confused, as well. Cooper points to plea counsel's misstatement about a specific charge having "a 25-year lid." However, this misstatement does not prove that Cooper was misadvised about the terms of the plea agreement. More importantly, it also does not prove that plea counsel *affirmatively told* Cooper that he would not be sentenced to more than fifteen years.

21

Likewise, Cooper points to plea counsel's inaccurate explanation of first-degree murder's range of punishment as "a hard 50 without the possibility of parole," a charge Cooper avoided in making his plea under the amended information. However, this similarly fails to prove that plea counsel told Cooper that he would be sentenced to no more than fifteen years and in fact refers to a charge which Cooper was no longer facing.

Importantly, Cooper failed to allege that he was prejudiced by plea counsel's alleged error. In its entirety, Cooper claimed in his amended motion that he "did not knowingly and voluntarily plead guilty" because "[his] counsel told [him] that if he accepted the plea, [he] would not be sentenced to over fifteen (15) years." Cooper did not allege that, but for this alleged error by plea counsel, he would have not pleaded guilty and would have insisted on going to trial.

The motion court found that the record made at the guilty plea hearing refuted Cooper's claim that counsel told him that he would not be sentenced to more than fifteen years' imprisonment. In so finding, it is evident the motion court did not believe Cooper's testimony, and it was under no obligation to do so. *See Hurst v. State*, 301 S.W.3d 112, 119 (Mo. App. E.D. 2010). The motion court found credible plea counsel's testimony, bolstered by the plea hearing transcript, that he told Cooper that there is no certainty as to how the judge will sentence. We defer to the motion court's credibility determinations. *Smith v. State*, 413 S.W.3d 709, 715 (Mo. App. E.D. 2013).

22

Cooper was fully advised by counsel of the consequences of pleading guilty. We find no reasonable basis in the record for Cooper's contention that plea counsel provided incorrect advice which rendered his plea involuntary. The motion court did not clearly err. Point II is denied.

### *Point Three.*

In his third point on appeal, Cooper argues that the motion court clearly erred in disallowing him to file a second amended motion because the motion court miscalculated the filing deadline. Alternatively, Cooper alleges that the motion court erroneously failed to apply the abandonment doctrine.

#### *A. Cooper's second amended motion was not timely filed.*

Under the version of Rule 24.035 that governed Cooper's amended motion, if no appeal of the judgment sought to be vacated is taken:

> the amended motion shall be filed within sixty days of the earlier of: (1) the date both a complete transcript consisting of the guilty plea and sentencing hearing has been filed in the trial court and counsel is appointed or (2) the date both a complete transcript consisting of the guilty plea and sentencing hearing has been filed in the trial court and an entry of appearance is filed by any counsel that is not appointed but enters an appearance on behalf of movant.

Rule 24.035(g) (2014). "The court may extend the time for filing the amended motion for one additional period not to exceed thirty days." *Id.*

Cooper timely filed his *pro se* motion for post-conviction relief pursuant to Rule 24.035. On May 23, 2014, the transcript of the guilty plea and sentencing hearing was filed and the sixty-day deadline for filing Cooper's amended motion began to run. Later, a thirty-day extension to file the amended motion was granted by the motion

23

court making Cooper's amended motion due on August 21, 2014.[9] *Retained* counsel McMillin timely filed Cooper's amended motion on that date.

Cooper contends that the initial sixty-day deadline for filing his amended motion was not triggered by the filing of the guilty plea and sentencing transcript on May 23, 2014. He alleges that the transcript was not "complete" in that it omitted an August 9, 2013, hearing on Cooper's motion to withdraw his guilty plea which was ultimately filed with the court on December 6, 2018. Accordingly, he argues that the initial deadline for his amended motion should have been March 5, 2019, by which time his second amended motion was timely filed. We disagree.

On May 23, 2014, "a complete transcript *consisting of both the guilty plea and sentencing hearing*" was filed with the court. *See* Rule 24.035(g) (2014) (emphasis added). Because a "complete transcript" within the context of Rule 24.035(g) "consist[s] of the guilty plea and sentencing hearing," the absent transcript of Cooper's motion to withdraw guilty plea was of no impact. *See Bearden v. State*, 530 S.W.3d 504, 506 (Mo. 2017) ("Rule 24.035(g) defines a 'complete transcript' as 'consisting of' the transcript of the 'guilty plea and sentencing hearing.' The 'complete transcript' does not include a transcript of the probation revocation hearing."). Our Supreme Court has made it clear in its Rule 24.035(g) precisely what it means by a 'complete transcript' by stating that it "consist[s] of the guilty plea and sentencing hearing." Had our Supreme Court intended for other, ancillary proceedings to be a

---

[9] Cooper was initially represented by appointed counsel, who requested the transcript and made motion for extension of time to file the amended motion. Appointed counsel later withdrew and retained counsel McMillin entered his appearance.

part of the 'complete transcript' for purposes of starting the sixty-day clock on the filing of an amended motion, they would have so stated. They did not, and thus, Cooper's amended motion was due, after extension, by August 21, 2014. Because Cooper's second amended motion was filed on September 10, 2018, it was of no consequence. The motion court did not err in calculating the deadline for the filing of Cooper's second amended motion.

### B. The motion court did not err in failing to apply the abandonment doctrine.

Cooper contends that if the motion court correctly calculated the deadline for filing an amended motion, then the motion court clearly erred in failing to find that he was abandoned by his *retained*, post-conviction counsel.

The Missouri Supreme Court has stated that:

> [T]he categories of claims of abandonment long have been fixed: in general abandonment is available when (1) post-conviction counsel takes no action on movant's behalf with respect to filing an amended motion . . . or (2) when post-conviction counsel is aware of the need to file an amended post-conviction relief motion and fails to do so in a timely manner.

*Barton v. State*, 486 S.W.3d 332, 338 (Mo. banc 2017) (citations and quotations omitted). Importantly, "[t]he origins of the abandonment doctrine . . . reflect that the doctrine applies only to appointed counsel" and not retained counsel. *Gittemeier v. State*, 527 S.W.3d 64, 68 (Mo. banc 2017). Cooper's post-conviction counsel, McMillin, was retained and not appointed. For this reason, Cooper is not entitled to relief under

25

the abandonment doctrine and the motion court did not clearly err in failing to apply same.[10] *Id.*

Therefore, the motion court did not clearly err in failing to apply the abandonment doctrine. Point III denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

---

[10] Without citing to any authority, Cooper argues that *Gittemeier* is distinguishable because McMillin was disbarred, and in doing so the Missouri Supreme Court found that McMillin "effectively abandoned" his clients. *In re McMillin*, 521 S.W.3d at 610. In addition, Cooper asserts that even though his amended motion was timely filed by McMillin, McMillin's personal drug, alcohol, and mental health problems which preceded his amended motion's filing created "effective abandonment". Finally, though not contained in his amended motion, Cooper contends that the abandonment doctrine should apply because he should not be treated differently based on his ability to hire counsel than those who cannot hire counsel. By doing so, he reasons, his equal protection rights are violated. *Gittemeier*'s holding is clear: *without exception, the abandonment doctrine applies solely to appointed counsel. Gittemeier*, 527 S.W.3d at 71. Thus, Cooper's arguments herein described are meritless.